2011 UT App 294

**ALPINE ORTHOPAEDIC SPECIALISTS, LLC, Plaintiff and Appellant,**

v.

**UTAH STATE UNIVERSITY and Intermountain Healthcare, Inc., Defendants and Appellee.**

No. 20100275–CA.

Court of Appeals of Utah.

Sept. 1, 2011.

Peter Stirba and R. Blake Hamilton, Salt Lake City, for Appellant.

Mark L. Shurtleff and Brent A. Burnett, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 This dispute grows out of Utah State University's decision to issue a request for proposals for athletic team physician services at a time when it was contractually obligated to Alpine Orthopaedic Specialists, LLC for those services. Alpine appeals the trial court's decision granting summary judgment in favor of USU. We affirm.

## BACKGROUND

¶ 2 In October 2000, USU issued a request for proposals (RFP) for team physician services for its intercollegiate athletic program. USU subsequently withdrew the RFP and entered into negotiations with Alpine. In March 2001, Alpine and USU entered into a Personal Services Agreement (the Agreement) for these services. The Agreement expressly stated that it "shall continue for an initial term of five (5) years" and, "[t]hereafter, th[e] Agreement shall automatically renew for an additional period of five (5) years unless otherwise agreed upon." The first five-year term began March 13, 2001, and ended March 12, 2006. The second five-year term would have begun on March 13, 2006.

¶ 3 In April 2005, USU officers informed Alpine that they believed the Agreement did not comply with the Utah Procurement Code, see generally Utah Code Ann. §§ 63G–6–101 to –1002 (2008 & Supp.2010),[1] and that USU would seek competitive bids for team physician services instead of renewing the Agreement in 2006. On February 17, 2006, USU issued an RFP for team physician services. Although Alpine disagreed with USU's conclusion that an RFP was necessary or appropriate, Alpine submitted a proposal on March 28, 2006.

¶ 4 On March 30, 2006, Alpine sent a letter to USU's chief procurement officer explaining its position that the Agreement did not violate the Utah Procurement Code and raising two issues: (1) Alpine's protest of "the proposed termination of the [Agreement]" and (2) Alpine's request that USU review "whether the RFP is necessary in light of the [Agreement] between [Alpine] and USU." The letter closed by formally appealing USU's decision "to issue the RFP and request[ing] that[,] prior to considering the Proposals, USU issue a formal opinion stating its position with respect [to whether] the [Agreement] is binding and whether the RFP is in fact necessary."

¶ 5 On April 14, 2006, USU's chief procurement officer sent Alpine a decision letter concluding that USU and Alpine had violated the Utah Procurement Code by executing the Agreement in March 2001. The decision stated that (1) because the Agreement was not awarded in compliance with Utah law, it was "invalid and unenforceable"; (2) the competitive bid process was necessary to rectify the prior error; and (3) USU planned to go ahead with the RFP. The letter also informed Alpine of its "right to seek judicial review within fourteen (14) calendar days after receipt of this letter," citing provisions of the Utah Code now renumbered as sections 63G–6–815(1)(a) and –817(1)(b). See Utah Code Ann. §§ 63G–6–815(1)(a), –817(1)(b) (2008). Alpine did not seek judicial review of the decision within fourteen days.

¶ 6 Effective May 30, 2006, USU contracted with Intermountain Healthcare, Inc. (IHC) for team physician services. On November 2, 2006, Alpine filed a suit against USU in district court, alleging breach of contract and other claims. In July 2007, Alpine amended its complaint to add IHC as a defendant.

¶ 7 On cross-motions for summary judgment, the district court ruled that USU and Alpine did not comply with the procedures required under the Utah Procurement Code when they entered into the Agreement. See id. § 63G–6–408 (2008) (describing the procedure for using competitive sealed proposals). Nevertheless, the court concluded that USU had ratified the Agreement by its performance, and as a result, the Agreement constituted a valid and enforceable contract. But the district court ultimately granted

1. For the reader's convenience, we cite to the current version of the Utah Code.

summary judgment to USU on the grounds that (1) the twenty-day statute of limitations, *see id.* § 63G–6–817(1)(a), barred the suit and (2) Alpine had failed to "mitigate its damages"[2] by timely seeking judicial review of the chief procurement officer's decision. Regarding the applicable statute of limitations, the court stated as follows:

> The specific statute of limitations in Utah Code Annotated § 63G–[6]–817(1) controls over the general statute of limitations in Utah Code Annotated § 63G–[6]–817(3). In particular, the Legislature anticipated and specifically provided for the situation of this case where an actual contractor is aggrieved by the alleged breach of its contract through a subsequent procurement of the same services.

In granting USU's motion for summary judgment, the court also stated that Alpine "knew or had reason to know of facts giving rise to its action by May 18, 2008[,] and did not file within the required 20 calendar days thereafter."

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Alpine argues that the trial court applied the wrong statute of limitations when it granted USU's motion for summary judgment.[3] Determining which statute of limitations is applicable constitutes a question of law that we review for correctness. *See Gillmor v. Summit Cnty.*, 2010 UT 69, ¶ 16, 246 P.3d 102.

¶ 9 When considering a motion for summary judgment, we review a trial court's legal conclusions and decision to grant summary judgment for correctness, "giv[ing] no deference to the trial court's conclusions of law." *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989). We view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *See Gillmor v. Blue Ledge Corp.*, 2009 UT App 230, ¶ 4, 217 P.3d 723 (citation and internal quotation marks omitted).

## ANALYSIS

¶ 10 The question before us is whether the trial court erred by determining that the statute of limitations barred Alpine's complaint against USU, and that question, in turn, depends on the nature of the claim. The court determined that it had subject matter jurisdiction over Alpine's suit pursuant to Utah Code section 63G–6–815(1)(a) because Alpine brought its claim as a contractor who was "aggrieved in connection with the solicitation or award of a contract," Utah Code Ann. § 63G–6–815(1)(a) (2008). Consequently, the court concluded that Utah Code section 63G–6–817(1)(a) provided the applicable statute of limitations. *See id.* § 63G–6–817(1)(a) (establishing a limitations period of twenty calendar days for actions brought pursuant to Utah Code section 63G–6–815(1)(a)).[4]

¶ 11 With limited exceptions, the Utah Procurement Code applies to "every expenditure of public funds ... by any state agency under any contract." *Id.* § 63G–6–104(2). One of the purposes of the Procurement Code is to promote fairness in the competi-

---

**2.** Mitigation of damages is a substantive law doctrine "requiring a plaintiff, after an injury or breach of contract, to make reasonable efforts to alleviate the effects of the injury or breach." *Black's Law Dictionary* 1093 (9th ed.2009). Thus, it is not a defense to liability for breach of contract, much less a synonym for the exhaustion of administrative remedies; rather, if raised as an affirmative defense, *see* Utah R. Civ. P. 8(c), it is to be considered when calculating the amount of damages to be awarded after liability has been determined, *see Black's Law Dictionary* 1093 (9th ed. 2009) ("If the defendant can show that the plaintiff failed to mitigate damages, the plaintiff's recovery may be reduced.").

**3.** Alpine also argues that the trial court erred by granting USU's summary judgment motion on a

rationale of failure to mitigate damages. Alpine is probably right that "mitigation of damages" is wide of the mark, *see supra* note 2, but because our resolution of the first issue is dispositive, we do not consider this argument.

**4.** Although USU did not challenge the trial court's decision, it argues in response to Alpine's appeal that the applicable statute of limitations for this case is found in Utah Code section 63G–6–817(1)(b), which establishes a limitations period of fourteen days "after receipt of a final administrative decision pursuant to ... Section 63G–6–806 [regarding decisions of the chief procurement officer]." Utah Code Ann. § 63G–6–817(1)(b) (2008).

tive bidding process for vendors seeking to do business with the state and other public entities. *See id.* § 63G–6–102(2). The Procurement Code ordinarily requires that contracts involving the expenditure of public funds be awarded using a process of competitive sealed bidding, *see id.* § 63G–6–401(1) (Supp.2010), including contracts for professional services, *see id.* § 63G–6–408(1)(b)(i) (2008).

¶ 12 Under the Procurement Code, USU is a "local public procurement unit." *See id.* § 63G–6–103(14) (defining a "local public procurement unit" as "any political subdivision or institution of higher education of the state"). Only certain sections of the Procurement Code apply to local public procurement units such as USU. *See id.* § 63G–6–104(3)(a) (listing those sections of the Procurement Code that apply to local public procurement units, including sections 63G–6–303 through –420, –801 through –806, and –815 through –819). Furthermore,

[f]or the purpose of application of those sections and subsections to a local public procurement unit, "state" shall mean "local public procurement unit," [and] "chief procurement officer" or "head of a purchasing agency" shall mean any person conducting procurement for a local public procurement unit.

*Id.* § 63G–6–104(3)(c). Thus, the references to "chief procurement officer" in sections 63G–6–801 through –806 refer, in this case, to USU's chief procurement officer.

¶ 13 When a controversy arises between a contractor and the state, the contractor may file a suit in district court, subject to the procedural requirements of the Procurement Code. *See id.* § 63G–6–815 (describing district court jurisdiction over actions involving the Utah Procurement Code). Alternatively, a contractor may pursue administrative remedies under the Procurement Code to resolve the controversy. *See id.* § 63G–6–801(1)

("Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer[.]").[5] Section 63G–6–805 gives the chief procurement officer authority to settle controversies between a contractor and the state, providing, in pertinent part, as follows:

The chief procurement officer ... is authorized, prior to commencement of an action in court concerning the controversy, to settle and resolve a controversy which arises between the state and a contractor under or by virtue of a contract between them. This includes, without limitation, controversies based upon breach of contract. . . .

*Id.* § 63G–6–805.

¶ 14 While the Procurement Code does not *limit* a contractor to administrative remedies, nevertheless, once a contractor elects to pursue administrative remedies, it is subject to the comprehensive requirements outlined in the Procurement Code, *see generally id.* §§ 63G–6–801 to –820 (2008 & Supp.2010) ("Legal and Contractual Remedies"). Of particular significance in this case is the provision that decisions of the chief procurement officer "shall be final and conclusive unless the protestor, prospective contractor, or contractor appeals administratively to the procurement appeals board in accordance with Subsection 63G–6–810(2) or ... commences an action in district court in accordance with Section 63G–6–815."[6] *Id.* § 63G–6–806(2) (2008).

¶ 15 When USU issued an RFP in February 2006 in contravention of the Agreement, Alpine sent USU's chief procurement officer a letter of protest, thereby exercising its right to seek an administrative remedy under the Utah Procurement Code. *See id.* § 63G–6–801. Having made that choice, Alpine was bound by the provisions of the Procurement

---

5. The chief procurement officer must issue a written decision on the controversy, stating "the reasons for the action taken and inform[ing] the protestor, contractor, or prospective contractor of the right to judicial or administrative review as provided in this chapter." Utah Code Ann. § 63G–6–806(1) (2008). Furthermore, while such controversies are pending, "the state shall not proceed further with the solicitation or with

the award of the contract until all administrative and judicial remedies have been exhausted." *Id.* § 63G–6–802.

6. This statutory language defeats any argument that Alpine is not bound by the determinations of the chief procurement officer.

Code. As a result, once the chief procurement officer issued his decision, if Alpine thought the decision was incorrect, its recourse under the Utah Procurement Code was to appeal "to the procurement appeals board in accordance with Subsection 63G–6–810(2) or ... commence[ ] an action in district court in accordance with Section 63G–6–815." *Id.* § 63G–6–806(2). Thus, because Alpine challenged the chief procurement officer's decision by commencing an action in district court, its suit was subject to the provisions of section 63G–6–815. *See id.*

■ ¶ 16 Alpine now argues that the district court erred when it determined that Alpine was "aggrieved in connection with the solicitation or award of a contract" pursuant to section 63G–6–815. *Id.* § 63G–6–815(1)(a). Alpine asserts that section 63G–6–815(1)(a) applies only to situations "when the action arises in the formation and execution of a contract" and contends that it was aggrieved, instead, by the breach of a "valid and binding" existing contract. According to Alpine, "the form of breach is in [USU's] failure to act in accordance with [the Agreement's] provision for automatic renewal." As a result, Alpine contends that Utah Code section 63G–6–817(3) applies to its breach of contract claim and that the applicable statute of limitations is six years. *See id.* § 63G–6–817(3) ("The statutory limitations on an action between private persons on a contract or for breach of contract shall apply to any action commenced pursuant to Subsection 63G–6–815(1)(c)[.]"). We disagree with Alpine's interpretation of Utah Code section 63G–6–815(1)(a).

■ ¶ 17 The Utah Procurement Code does not define the phrase "in connection with the solicitation or award of a contract," *id.* § 63G–6–815(1)(a), nor does the statute

otherwise explain the Legislature's intended meaning of this phrase. We interpret statutes according to their plain meaning and "need not look beyond the plain language unless we find some ambiguity." *State v. MacGuire,* 2004 UT 4, ¶ 15, 84 P.3d 1171 (citation and internal quotation marks omitted). "[W]hen the words of a statute consist of 'common, daily, nontechnical speech,' they are construed in accordance with the ordinary meaning such words would have to a reasonable person familiar with the usage and context of the language in question." *Olsen v. Eagle Mountain City,* 2011 UT 10, ¶ 9, 248 P.3d 465 (citation omitted). For this reason, "courts often refer to the dictionary to define statutory terms." *See Keene v. Bonser,* 2005 UT App 37, ¶ 10, 107 P.3d 693.

¶ 18 The phrase "in connection with" is not ambiguous. The meaning of the word "connection" includes "the state of being connected or linked," a "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)." *Webster's Third New International Dictionary* 481 (1993). Thus, the phrase "in connection with" expresses some relationship or association, one that can be satisfied in a number of ways. Considering the plain meaning of the phrase, we are persuaded that the phrase should be interpreted broadly and that it covers a wide range of relationships.

¶ 19 Here, Alpine has stated that "the form of breach is in [USU's] failure to act in accordance with [the Agreement's] provision for automatic renewal." Furthermore, Alpine contends that the manner in which USU violated the automatic renewal provision was by issuing the RFP and subsequently awarding the contract to IHC, i.e., the solicitation and award of the 2006 contract.[7] In light of

7. In its reply brief, Alpine contends that the solicitation of the RFP and award of the contract was only one of USU's acts or omissions that breached the Agreement. Alpine also raised this argument at the hearing on the summary judgment motion. We have reviewed the allegations of conduct in Alpine's complaint that purportedly constituted grounds for breach of contract and conclude that the alleged acts relate generally to the validity of the Agreement, which the trial court addressed in its order finding the Agreement to be valid and binding, or to USU's failure

to renew the Agreement. There are many ways in which a breach of contract may occur that would be unrelated to the solicitation or award of a contract. Based on the facts in this case, however, the essence of Alpine's claim is that USU's issuance of an RFP and subsequent award of a new contract breached the Agreement. And where the variant of an alleged breach is connected with the solicitation or award of a contract, such a claims falls squarely under the provisions of Utah Code section 63G–6–815(1)(a)

our understanding of the ordinary meaning of the phrase "in connection with," that phrase is broad enough to encompass the direct causal relationship between the solicitation and award of the 2006 contract and Alpine's breach of contract claim. Thus, we see no error in the trial court's reasoning that Alpine brought its breach of contract claim as a contractor who was "aggrieved in connection with the solicitation or award of a contract," *id.* § 63G–6–815(1)(a). Moreover, because the trial court did not err by reaching that conclusion, Utah Code section 63G–6–817(1) provided the applicable statute of limitations.

## CONCLUSION

¶ 20 We see no error in the trial court's decision that Alpine's breach of contract claim was subject to Utah Code section 63G–6–817(1) based on its correct conclusion that Alpine brought its action under section 63G–6–815(1)(a), i.e., as a contractor "aggrieved in connection with the solicitation or award of a contract." Utah Code Ann. § 63G–6–815(1)(a) (2008). Because Utah Code section 63G–6–817(1) requires filing of suit within either fourteen or twenty days,[8] Alpine's complaint, filed in November 2006, was not timely and is barred by the statute of limitations.

¶ 21 Affirmed.

¶ 22 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and CAROLYN B. McHUGH, Associate Presiding Judge.

and the related limitations periods provided in section 63G–6–817(1).

8. We need not determine which of the two limitations periods apply because, under either one, the limitations period had run long before Alpine filed its complaint in district court.