**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 15, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEVELOPERS SURETY AND
INDEMNITY COMPANY,

     Plaintiff - Appellee,

v.

MATTHEW I. BARLOW, individually;
LISA BARLOW, individually,

     Defendants - Appellants,

and

TERI HANSEN, individually,

     Defendant.

No. 14-4160
(D.C. No. 2:12-CV-00289-TC-DBP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Matthew and Lisa Barlow appeal pro se from the district court's judgment in

favor of Developers Surety and Indemnity Company on Developers' claim that the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Barlows breached their contractual obligations under an indemnity agreement. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In 1995, Matthew Barlow and Ben Hansen formed Network Electric, Inc. They were Network's sole officers, directors, and shareholders.

Anticipating federal construction contracts in Utah that would require bonds, the Barlows, Ben and Teri Hansen, and Network (collectively, the Indemnitors) entered into an indemnity agreement with Developers in April 2004 (the Agreement). Matthew Barlow and Ben Hansen signed the Agreement in their individual capacities and as officers of Network. Their spouses signed in their individual capacities. The Indemnitors agreed to jointly and severally indemnify Developers from "any and all liability, loss, claims, demands, costs, damages, [and] attorneys' fees and expenses" arising from bonds Developers might issue in the future on behalf of Network. R., Vol. I, pt. 1 at 278, ¶ 1. The Indemnitors warranted that they were "specifically and beneficially interested in obtaining each Bond." *Id.* at 283, ¶ 14.3. The Agreement defined "Bond" as any surety contract issued "before or after the date of [the] Agreement." *Id.* at 278. Under the Agreement the Indemnitors' obligations would continue "unless terminated as to future Bonds by written notice to [Developers] as . . . provided [in the Agreement]." *Id.* at 282, ¶ 13. The notice provision required an Indemnitor to give written notice to Developers "by certified mail, return receipt requested, addressed to [Developers] at [Developers'] address" and to state in the

2

notice "the effective date . . . of the termination of the liability of such Indemnitor for any future Bond." *Id.* at 283, ¶¶ 13.1, 13.2.

By March 2006, Matthew Barlow had sold his stock and interest in Network, severed all ties with the company, and taken a new job. The Barlows moved to Arizona soon thereafter.

Between July 2008 and June 2009, Developers issued six performance and payment bonds on behalf of Network. Network paid a premium to Developers for each bond. Developers later received claims against the bonds in excess of $400,000. It elected to pay the claims in full and then demanded that the Indemnitors meet their obligations under the Agreement. After Network paid Developers a little more than $75,000, Developers filed this action in the United States District Court for the District of Utah, seeking to recover the remainder of its losses as well as expenses and legal fees from the Indemnitors.

The district court ultimately granted summary judgment against the Barlows for $485,646.49 and denied the Barlows' motion for summary judgment. This appeal followed.[1]

## II.    DISCUSSION

We review de novo the district court's rulings on motions for summary judgment, viewing the evidence and drawing reasonable inferences from it in the

---

[1] The clerk of this court ordered the Barlows to file a brief addressing a possible defect in appellate jurisdiction grounded in the timing of their notice. We have reviewed the Barlows' response and conclude that we have jurisdiction to review the rulings that the Barlows challenge.

3

light most favorable to the nonmovant. *See Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the Barlows proceed pro se, we construe their filings liberally. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

The gist of the Barlows' arguments is that they are not liable under the Agreement because they received no benefit from the issuance of bonds after Matthew Barlow severed ties with Network and Developers knew of that severance. They claim that the Agreement did not cover those bonds and even if it did, they cannot be liable because of lack of consideration and failure of consideration. They also claim that even if they are liable, the amount of the award is improper. We are not persuaded.

To begin with, the Barlows argue that they agreed to indemnify Developers only with respect to bonds in which they had a specific and beneficial interest. In support, they rely on two provisions in the Agreement. The first states that indemnification is given "[i]n consideration of the execution and delivery by [Developers] of a Bond or any Bonds on behalf of [Network]." R., Vol. 1, pt. 1 at 278, ¶ 1. The second provides that "[Network] and Indemnitor warrant that each Indemnitor is specifically and beneficially interested in obtaining each Bond." *Id.* at 283, ¶ 14.3.

4

Under Utah law, "[i]ndemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions." *Pavoni v. Nielsen*, 999 P.2d 595, 599 (Utah Ct. App. 2000).[2] "When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling." *Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 94 P.3d 292, 295 (Utah 2004) (internal quotation marks omitted). If that language "is unambiguous[,] a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Id.* (ellipsis and internal quotation marks omitted). "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Id.* (internal quotation marks omitted).

The Agreement is not ambiguous. No provision releases an Indemnitor if the Indemnitor lacks a sufficient interest in the bonds. If an Indemnitor is no longer interested in whether Network obtains a bond, the Indemnitor need only provide notice to Developers to end his or her liability on future bonds. The Indemnitors'

---

[2] The Barlows rely on several Utah cases for the proposition that an indemnity contract must be strictly construed to determine whether the parties' intent to indemnify is sufficiently clear and unequivocal. The rule of those cases, however, applies when an agreement purports to indemnify for another's negligent conduct. *See, e.g.*, *Freund v. Utah Power & Light Co.*, 793 P.2d 362, 370 (Utah 1990); *Healey v. J.B. Sheet Metal, Inc.*, 892 P.2d 1047, 1049 (Utah Ct. App. 1995). Because the Agreement does not involve indemnification for negligence, the rule is inapplicable, and ordinary rules of contract interpretation apply.

5

warranty that they have a specific and beneficial interest in the bonds is an obligation of the Indemnitors; it does not bind Developers.

Nor have the Barlows produced any evidence of lack of consideration. The Agreement provides that the consideration for the Indemnitors' executing the Agreement (and for the payment of a premium to Developers by one of the Indemnitors) is that Developers would issue bonds. Developers did so. Each time it did so, it provided consideration that bound the Indemnitors. A party to a contract can provide consideration by suffering a detriment (such as issuing a bond); there is no requirement that the other party obtain a benefit. *See Manwill v. Oyler*, 361 P.2d 177, 178 (Utah 1961) ("[I]n order for a contract to be valid and binding, each party must be bound to give some legal consideration to the other by conferring a benefit upon him *or suffering a legal detriment at his request*." (emphasis added)).

By the same token, the Barlows have not shown failure of consideration. "Where consideration fails, there was a contract when the agreement was made, but because of some supervening cause, the promised performance fails." *Gen'l Ins. Co. of Am. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 504 (Utah 1996). "Failure of consideration exists wherever one who has either given or promised to give some performance fails without his fault to receive in some material respect *the agreed exchange* for that performance." *Bentley v. Potter*, 694 P.2d 617, 619 (Utah 1984) (emphasis added) (internal quotation marks omitted). The Barlows view the agreed exchange as their "promise to indemnify Developers on Bonds that [they were] beneficially interested [in]." Aplt. Opening Br. at 24. But the failure of

6

consideration must be a failure of the opposing party to the contract to perform as agreed. *See Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 92 (Utah 1988) (rejecting defendants' failure-of-consideration argument because they "received the promised performance, or consideration"). And Developers did all it was required to do—execute the bonds (regardless of what benefit the Indemnitors might receive).

Alternatively, the Barlows argue that they are relieved of liability because Developers knew that they had severed their ties to Network before the bonds were executed and did not rely on the Barlows' financial condition in deciding to execute them. This argument is foreclosed by the Agreement, which provides a specific procedure for the Indemnitors to escape future liability—written notice. The Barlows cannot escape the notice requirement by pointing to facts known by Developers that might indicate that the Barlows no longer wished to abide by the Agreement. Developers' insistence on proper notice is reasonable. Evidence of the sort relied on by the Barlows is ambiguous. Someone who has sold an interest in a business may still want the business to succeed. For example, payment for the sold interest may be coming from future revenue of the business.

Moreover, the Barlows do not support their factual contentions with evidence presented to the district court with the summary-judgment motions. Developers' brief in this court asserts that the documents referenced in the Barlows' opening brief are not in the district-court record, and the Barlows do not dispute that assertion in their reply brief. *See Allen v. Minstar, Inc.*, 8 F.3d 1470, 1475 (10th Cir. 1993)

7

(appellate review is limited to record before district court). We therefore reject this alternative argument for lack of either legal or factual support.[3]

Finally, the Barlows contend that the damage award was improper because Developers did not prove the amount of damages and it did not mitigate damages. Both contentions fail.

As to the first, the Agreement identifies what constitutes prima facie evidence of Developers' damages:

> In any claim or suit [under the Agreement], an itemized statement of claims or losses paid or liabilities incurred and expenses paid or incurred, declared under penalty of perjury to be true and correct by an officer of [Developers], or the vouchers or other evidence of disbursement by [Developers], *shall be prima facie evidence* of the fact and extent of liability hereunder of [Network] and Indemnitor.

R., Vol. I, pt. 1 at 279 ¶ 2.4 (emphasis added). Developers provided the required documentation, and the Barlows offered nothing to show that the requested sum was

---

[3] The Barlows raise two additional arguments bearing on whether Developers had notice of their intent to terminate their indemnity obligation under the Agreement. The first is that, because the Agreement did not specify a time for the issuance of the bonds, the bonds had to be issued within a reasonable time, and the issuance of the bonds well after the Barlows terminated their relationship with Network was not within a reasonable time. But they have not pointed to where this argument was raised in the district court, and we have not found it there. So we decline to consider it. *See Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (appellate court ordinarily declines to consider theory raised for first time on appeal). The other argument is that no reasonable mind could conclude that Developers would extend nearly $2 million in bonds to Network without clear knowledge of Network's "financial condition and [the] whereabouts of [its] owners." Aplt. Reply Br. at 13. We decline to consider this argument for two reasons: the Barlows did not present it to the district court, *see Lyons*, 994 F.2d at 721, and it is raised for the first time in the Barlows' appellate reply brief, *see United States v. Murray*, 82 F.3d 361, 363 n.3 (10th Cir. 1996) ("We decline to consider arguments raised for the first time in a reply brief.").

8

in error.  Under Utah law a damages judgment in favor of a party is proper if the party "present[s] a prima facie case of its damages" and the other party fails to present any contrary evidence, such as the unreasonableness of the requested amount. *See Darger v. Nielsen*, 605 P.2d 1223, 1225 (Utah 1979) ("Defendant presented a prima facie case of its damages, and plaintiff did not present evidence that [the claimed] charges were unreasonable, or that defendant could have had the [work] finished at a lower price.").  It is irrelevant that the district court relied on the law of jurisdictions other than Utah as support for this proposition.

Regarding mitigation, the Barlows first contend that Developers could have mitigated its damages by not issuing the bonds in the first place.  They assert that it knew before the issuance of five of the bonds that two other sureties had recently declined to extend credit to Network.  But mitigation "requir[es] a plaintiff, *after an injury or breach of contract*, to make reasonable efforts to alleviate the effects of the injury or breach."  *Alpine Orthopaedic Specialists, LLC v. Utah State Univ.*, 263 P.3d 501, 503 n.2 (Utah Ct. App. 2011) (emphasis added) (internal quotation marks omitted).  We are aware of no doctrine that a party to a contract can escape liability on the ground that the other party was foolish to enter into the contract.

Second, the Barlows claim that Developers made no reasonable effort to secure payment from alternate sources—a $127,315 payment due Network on a project and undispersed loan proceeds from Network's half-million-dollar revolving line of credit with the Bank of Utah.  But the Agreement explicitly relieved Developers from any obligation to seek indemnity from Network:

9

Principal and Indemnitor hereby waive and agree not to assert . . . [a]ny right to require [Developers] to proceed against [Network] or Indemnitor or any other person[,] firm[,] or entity, or to proceed against or exhaust any security held by [Developers] at any time, or to pursue any other remedy in [Developers'] power.

R., Vol. I, pt. 1 at 281, ¶ 8.3.  This argument fails.[4]

## III.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Harris L Hartz
Circuit Judge

---

[4] In their reply brief the Barlows argue that damages is a fact question for the jury.  But juries are necessary only to resolve disputed material issues of fact, and there was no such dispute here.  Also, we do not consider arguments raised for the first time in a reply brief.  *See Murray*, 82 F.3d at 363 n.3.

10