IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Alpine Orthopaedic Specialists, LLC, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100865-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (February 2, 2012) |
| Intermountain Healthcare, Inc. and Utah | ) | |
| State University, | ) | 2012 UT App 29 |
| | ) | |
| Defendants and Appellee. | ) | |

-----

First District, Logan Department, 060102502
The Honorable Clint S. Judkins

Attorneys:     Peter Stirba and R. Blake Hamilton, Salt Lake City, for Appellant
               Alan L. Sullivan and Troy L. Booher, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Plaintiff Alpine Orthopaedic Specialists, LLC (Alpine) appeals the district court's grant of summary judgment in favor of defendant Intermountain Healthcare, Inc. (IHC).  We affirm.

BACKGROUND[1]

¶2      In March 2001, Utah State University (USU) entered into a personal service agreement (the Agreement) with Alpine to provide team physician services for USU's intercollegiate athletic program (the services).[2]  Alpine designated Dr. Jonathan Finnoff to provide the services to USU.  In the spring of 2004, IHC and Dr. Finnoff discussed the possibility of Dr. Finnoff leaving his employment with Alpine to work for IHC. However, such employment never materialized because of apparent concerns regarding the proposed salary, a noncompete agreement between Alpine and Dr. Finnoff, and the doctor's lack of desire to live in Logan, Utah long term.  Dr. Finnoff continued to work for Alpine and provide the services for USU until he moved to Oregon in the spring of 2005.  Following Dr. Finnoff's departure, Alpine continued to provide the services for USU.

¶3      Although the Agreement contained an automatic five-year renewal provision, in February 2006, USU issued a request for proposals (RFP) soliciting competitive bids for the services Alpine had provided under the Agreement.  Alpine disagreed with USU's decision to not automatically renew the Agreement and to issue the RFP, and appealed that decision to USU's Chief Procurement Officer (the CPO).  The CPO agreed with USU's decision to issue the RFP, and therefore, USU continued to accept competitive bids.  Despite being informed that it could seek judicial review of the CPO's decision as provided by Utah statutes, *see generally* Utah Code Ann. §§ 63G-6-815(1)(a), -817(1)(b) (2011), Alpine did not appeal the CPO's ruling.  After completing the bidding process, USU awarded the services contract to IHC.

---

[1]We recite "'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'"  *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted); *see also Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258, 1261 (Utah 1984) ("Doubts, uncertainties or inferences concerning issues of fact must be construed in a light most favorable to the party opposing summary judgment.").

[2]A more complete background of the contractual relationship between USU and Alpine is presented in *Alpine Orthopaedic Specialists, LLC v. Utah State University*, 2011 UT App 294, ¶¶ 2-6, 263 P.3d 501.

¶4 Alpine sued USU for breach of contract and IHC for intentional interference with contractual or economic relations (the intentional interference claims). The district court granted summary judgment in favor of USU. After the district court certified as final its grant of summary judgment, *see generally* Utah R. Civ. P. 54(b), Alpine appealed. IHC attempted to intervene in that appeal, but this court denied IHC's request. This court affirmed the district court's grant of summary judgment in favor of USU because Alpine failed to timely appeal the CPO's decision that USU was entitled to issue the RFP. *See Alpine Orthopaedic Specialists, LLC v. Utah State Univ.*, 2011 UT App 294, ¶¶ 13-15, 19-20, 263 P.3d 501.

¶5 Meanwhile, in February 2010, IHC filed a motion for summary judgment arguing that based upon the undisputed evidence before the court, it was entitled to summary judgment as a matter of law. In response, Alpine filed a reply and a rule 56(f) motion requesting that it be given more time to respond because the deadline for expert discovery had not yet expired. Moreover, Alpine informed the court that it planned to retain an expert to establish that IHC acted improperly by violating an established professional standard when it attempted to recruit Dr. Finnoff in 2004. In September 2010, the district court denied Alpine's rule 56(f) motion and granted summary judgment in IHC's favor. The district court determined that Alpine did not fulfill its requirement of "show[ing] there [was] a genuine issue of disputed material fact for trial" and that Alpine did "not set forth any specific facts showing that [IHC] intentionally interfered with [Alpine]'s existing or potential economic relations, that [IHC] acted with an improper purpose or by improper means, or that [IHC] caused any injury to [Alpine]." Alpine now appeals.

ISSUE AND STANDARD OF REVIEW

¶6 Alpine argues that the district court improperly granted summary judgment to IHC. "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 18, 258 P.3d 539 (citing Utah R. Civ. P. 56(c)).

ANALYSIS

¶7    To establish its intentional interference claims against IHC, Alpine "'must prove (1) that . . . [IHC] intentionally interfered with . . . [Alpine]'s existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to . . . [Alpine].'" *Ferguson v. William & Hunt, Inc.*, 2009 UT 49, ¶ 35, 221 P.3d 205 (additional internal quotation marks omitted) (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)).

> A summary judgment movant, on an issue where the nonmoving party will bear the burden of proof at trial, may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact.  Utah R. Civ. P. 56(c).  Upon such a showing, whether or not supported by additional affirmative factual evidence, the burden then shifts to the *nonmoving* party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* [R. 56](e).

*Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600.

¶8    Alpine argues that IHC intentionally interfered with the Agreement when IHC attempted to recruit Dr. Finnoff away from Alpine while the Agreement was still in effect.  However, Alpine failed to submit evidence in the district court that would dispute an issue of material fact to preclude summary judgment.  *See generally Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 16, 192 P.3d 858 ("A party disputing a summary judgment motion has the burden of disputing the motion with material facts."); *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 31, 54 P.3d 1054 ("The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue.").  Notably, it was undisputed that Dr. Finnoff did not leave Alpine to work for IHC.  Alpine also did not dispute that "Dr. Finnoff testified that IHC did not interfere with his relationship with Alpine" or that USU's "motivation for re-bidding the team physician contract . . . was twofold:  (a) the . . . Agreement had not been bid lawfully in 2000; and, (b) USU needed to protect itself

and not be dependant on any one individual physician." Alpine produced no evidence that IHC's attempted recruitment of Dr. Finnoff caused USU to issue the RFP or caused USU to award the contract to IHC.[3]

¶9 Given the undisputed facts, IHC was entitled to summary judgment as a matter of law. Alpine's only argument to the district court was that IHC intentionally interfered with the Agreement by recruiting Dr. Finnoff. However, the undisputed facts precluded Alpine from establishing any causal connection between IHC's attempted recruitment of Dr. Finnoff in 2004 and USU's decision not to renew the Agreement and to issue the RFP in 2006. Thus, because USU's decision to issue the RFP was not based on IHC's attempted recruitment of Dr. Finnoff, Alpine did not establish that IHC intentionally interfered with the Agreement.

¶10 For similar reasons, the undisputed facts also precluded Alpine from demonstrating that IHC's actions caused Alpine any injury. *See generally Ferguson*, 2009 UT 49, ¶ 35 (setting forth the elements for intentional interference claims). Alpine claimed IHC's intentional interference with Alpine's employment of Dr. Finnoff injured Alpine when it lost the Agreement with USU. However, Alpine did not provide any evidence to support its allegation that IHC's attempted recruitment caused USU to issue the RFP for the services that had previously been provided by Alpine. *See Waddoups*, 2002 UT 69, ¶ 31 ("The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue."); *see, e.g.,*

---

[3]On appeal, Alpine argues that IHC knew of the Agreement for many years. Although the parties' summary judgment motions disputed what details IHC knew about the Agreement, Alpine has not explained how IHC's knowledge that Alpine had a contract with USU or IHC's expressed interest in procuring a similar agreement in the future with USU caused USU to issue the RFP. Furthermore, Alpine's summary judgment arguments did not address these facts but instead focused only on IHC's recruitment of Dr. Finnoff. Thus, Alpine did not preserve this argument for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or relevant legal authority. Issues that are not raised at trial are usually deemed waived." (alterations in original) (citation and internal quotation marks omitted)).

*Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶¶ 24, 33-34, 116 P.3d 323 (evaluating whether sufficient facts were disputed regarding injury for intentional interference claims to preclude summary judgment).

¶11   Not only has Alpine failed to connect IHC's actions in attempting to recruit Dr. Finnoff to USU's decision to issue the RFP, Alpine also failed to properly challenge USU's decision to issue the RFP. *See Alpine Orthopaedic Specialists, LLC v. Utah State Univ.*, 2011 UT App 294, ¶¶ 13-19, 263 P.3d 501.  Alpine's failure to properly appeal the CPO's decision affirming USU's issuance of the RFP resulted in USU's continued acceptance of bids and ultimate award of the contract to IHC.  Had Alpine properly appealed the CPO's decision, the bid process would have been stayed pending judicial review of USU's issuance of the RFP. *See* Utah Code Ann. § 63G-6-802 (2011) ("In the event of a timely protest . . . the state shall not proceed further with the solicitation or with the award of the contract until all administrative and judicial remedies have been exhausted or until the chief procurement officer, after consultation with the head of the using agency or the head of a purchasing agency, makes a written determination that the award of the contract without delay is necessary to protect substantial interests of the state."); *id.* § 63G-6-817(1) (setting time requirements for filing judicial review of an agency's decision to fourteen or twenty days); *see also Alpine Orthopaedic Specialists, LLC*, 2011 UT App 294, ¶¶ 13-15 & n.5.  In fact, once the CPO upheld USU's decision to not renew the Agreement and to issue the RFP, IHC's only action was to submit a bid.[4]  No evidence was submitted to establish that IHC intentionally interfered with the Agreement.  Rather, it was Alpine's own actions in not properly appealing the CPO's decision that led USU to award a contract for the services to IHC.  Because Alpine was not injured by any of IHC's actions, the district court correctly granted summary judgment in IHC's favor.[5]

---

[4]Although on appeal Alpine claims that IHC used improper financial incentives in its bid, Alpine did not argue to the district court that those financial incentives were improper or that they caused Alpine to lose the Agreement with USU.  Therefore, we do not consider this argument. *See 438 Main St.*, 2004 UT 72, ¶ 51.

[5]Because of this disposition, we do not address Alpine's arguments related to the improper means element or the district court's denial of its rule 56(f) motion.  Even if the district court had granted Alpine's 56(f) motion and Alpine could establish improper means by retaining an expert who would testify that recruiting another

(continued...)

CONCLUSION

¶12    We affirm the district court's grant of summary judgment in favor of IHC. Alpine failed to raise a genuine issue of material fact, and based on the undisputed facts, IHC was entitled to judgment as a matter of law because Alpine failed to demonstrate that IHC intentionally interfered with Alpine's economic relations or that Alpine was injured by such interference.

_____
Michele M. Christiansen, Judge

-----

¶13    WE CONCUR:

_____
James Z. Davis, Judge

_____
William A. Thorne Jr., Judge

_____

[5](...continued)
physician violated a professional standard, *see Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 35, 221 P.3d 205 (stating that one way to establish improper means is to "show that the defendant's means of interference . . . violated an established standard of a trade or profession" (internal quotation marks omitted)), the district court properly granted summary judgment because, as was previously explained, IHC was entitled to summary judgment as a matter of law based on the other elements of the intentional interference claims.