IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Steve Anderson, | ) | OPINION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20100929-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Larry H. Miller Communications | ) | (July 19, 2012) |
| Corporation, Dean Paynter, Chris Baum, | ) | |
| and John Doe, | ) | 2012 UT App 196 |
| | ) | |
| Defendants and Appellees. | ) | |

-----

Third District, Salt Lake Department, 090909953
The Honorable L.A. Dever

Attorneys:     April L. Hollingsworth, Salt Lake City, for Appellant
               Janet Hugie Smith and Michael E. Blue, Salt Lake City, for Appellees

-----

Before Judges Voros, Orme, and Thorne.

THORNE, Judge:

¶1     Steve Anderson appeals from the district court's entry of summary judgment in favor of Larry H. Miller Communications Corporation (LHMCC), Dean Paynter, and Chris Baum (collectively, Defendants) on Anderson's claims of breach of contract, promissory estoppel, fraud, and breach of the covenant of good faith and fair dealing. We affirm in part and reverse in part.

BACKGROUND[1]

¶2      In 2007, Anderson had been employed by the Davis County School District as a high school drama teacher for twenty-eight years and was two years away from retiring with a full pension.  Anderson had also done some occasional acting in movies and on television, including some work early in 2007 on a television show produced by LHMCC, which operated the KJZZ television station.  Through that work, Anderson had become acquainted with Paynter, who was LHMCC's Director of News and Program Development.

¶3      In late summer 2007, Paynter invited Anderson to audition for a new KJZZ morning show to be called KJZZ Cafe.  Anderson was hesitant because he was so close to retirement and he believed that KJZZ had a history of cancelling shows.  Anderson maintains that Paynter indicated to him that if he did accept an anchor position on the show, he would be guaranteed a salary for three years.  Anderson eventually chose to audition, and when Paynter offered him one of three anchor positions, Anderson began rehearsing with the show's other cast members on an unpaid basis.  He returned to full-time teaching when the fall 2007 semester began, informing Paynter that he would not give up his teaching position without a guaranteed contract.

¶4      Although no written contract offer had been forthcoming, Anderson formally began paid employment with LHMCC in November 2007, even as he continued his full-time teaching employment.  On November 28, Anderson signed various employment documents, including a single-page form entitled "Acknowledgment of Employee Handbook and 'At-Will' Employment" (the Acknowledgment).  In its four short paragraphs, the Acknowledgment included the following language, with no particular emphasis:

> I understand that my employment is "at-will."  I understand that I may quit for any reason or no reason at all and that my employment may be terminated at any time with or without cause or notice.

---

[1]Because Anderson appeals from the entry of summary judgment, we recite the facts in the light most favorable to Anderson as the nonmoving party.  *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

> . . . I also understand and agree that no person other than Larry H. Miller has the authority to enter into any binding commitment or agreement to or with me, on behalf of [LHMCC], and that any such commitment or agreement must be in writing and signed by all parties.

Despite this language, Anderson continued to press Paynter for a guaranteed contract and reiterated that he would not leave his full-time teaching position unless such a contract was in place.

¶5 In January 2008, just a few days before KJZZ Cafe was set to begin airing, Paynter presented Anderson with a purported written contract (the Agreement), which included a guaranteed salary for Anderson over the course of three years, starting at $80,000. However, the Agreement contained several blank spaces where contract terms had yet to be filled in, including spaces for the daily broadcast hours for KJZZ Cafe, the number of public relations events that Anderson could be required to attend annually, the termination date of the contract, and the dates upon which Anderson would receive annual salary increases. In the section outlining Anderson's duties, the language "[IS THERE ANYTHING ELSE WE OUGHT TO SPECIFY?]" was prominently displayed. The Agreement included signature blocks for both LHMCC and Anderson, but the LHMCC signature block did not name Larry H. Miller as the required signatory.

¶6 Neither Anderson nor any representative of LHMCC ever signed the Agreement. Anderson asserts that as he was about to sign the document, Paynter stopped him, "almost physically with a hand on the shoulder sort of thing." Paynter represented to Anderson that "the lawyers said" that the Agreement did not need to be signed to be enforceable. In reliance on the unsigned Agreement and Paynter's representations, Anderson informed his school employer that he would only teach part time as of the spring semester of the 2007–08 school year and proceeded to work for LHMCC as an anchor on KJZZ Cafe.

¶7 In November 2008, LHMCC cancelled KJZZ Cafe and terminated the show's employees, including Anderson. LHMCC refused to pay Anderson after KJZZ Cafe was cancelled. Anderson then sued LHMCC, Paynter, and LHMCC General Manager Chris Baum. Anderson's lawsuit asserted claims for breach of contract, promissory estoppel, fraud, and breach of the covenant of good faith and fair dealing.

¶8 Defendants moved for summary judgment on all of Anderson's claims, arguing that the claims were foreclosed by the language of the Acknowledgment that Anderson had signed upon accepting employment with LHMCC. Specifically, Defendants argued that, pursuant to the Acknowledgment, Anderson was an at-will employee and that his at-will status could only be altered by a written agreement signed by Larry H. Miller. Accordingly, neither the unsigned Agreement nor any alleged oral representations by Paynter could alter Anderson's at-will status or provide Anderson with a reasonable basis to believe that he had a guaranteed contract.

¶9 The district court agreed with Defendants and dismissed all of Anderson's claims with prejudice. As to the breach of contract claim, the district court determined that there was no contract between Anderson and LHMCC because there was no written contract signed by Larry H. Miller. The district court further determined that Anderson's promissory estoppel and fraud claims failed because it was not reasonable for Anderson to have relied on Paynter's oral representations in light of the Acknowledgment and because "[LHMCC] as an entity never made any of the alleged representations to [Anderson]." Finally, the district court dismissed Anderson's breach of the covenant of good faith and fair dealing claim because the implied covenant only applies to existing contract terms and was not a substitute for an actual contract between Anderson and LHMCC. Anderson appeals.


ISSUES AND STANDARDS OF REVIEW


¶10 Anderson argues that the district court's summary judgment ruling was erroneous as to each of his four claims. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). We review the district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness[, viewing] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 10, 235 P.3d 730 (internal quotation marks omitted).

ANALYSIS

¶11    Anderson brought four claims against Defendants, two of which depend on the existence of the contract alleged by Anderson, and two of which do not.  We first address Anderson's contract-based claims—breach of contract and breach of the implied covenant of good faith and fair dealing.  We then turn to his other claims of promissory estoppel and fraud.

I.  Anderson's Contract-Based Claims

¶12    Anderson alleges that he and LHMCC entered into a formal three-year contract as embodied in the Agreement and that LHMCC breached that contract when it failed to pay him the approximately two years' salary remaining on the contract after KJZZ Cafe was cancelled in November 2008.  Defendants contend that Anderson's employment with the company was simply an at-will employment contract that could be terminated at any time.  *See generally Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 53 (Utah 1991) ("The general rule concerning personal employment contracts is . . . the contract is no more than an indefinite general hiring which is terminable at the will of either party." (internal quotation marks omitted)).

¶13    The district court granted summary judgment to Defendants on this claim, relying on the Acknowledgment's language that Anderson was an at-will employee unless his at-will status was modified by a written agreement signed by Larry H. Miller.  On appeal, the parties expend considerable effort arguing whether Paynter had the actual or apparent authority to enter into an employment contract on Larry H. Miller's behalf.  However, we conclude that the district court properly entered summary judgment on Anderson's breach of contract claim because the Agreement was neither signed—by anyone—nor was it sufficiently definite to establish a contract between the parties.[2]

---

[2]We read Anderson's Complaint as asserting a breach of contract claim based *solely* on the alleged validity and enforceability of the Agreement as a contract.  For example, Anderson's breach of contract action sought "all benefits he was promised under the contract, including . . . attorneys' fees."  Anderson makes no allegation that Paynter made an oral representation of an attorney fees provision, and we can therefore

(continued...)

¶14     There is no dispute that the Acknowledgment, on its face, imposed the requirement of a signed writing to alter Anderson's at-will employment status.  At the same time, LHMCC "reserve[d] the right to depart from [its personnel] policies and guidelines or change them at its sole discretion."  Perhaps against a different factual backdrop, Paynter's conduct and representations could have led a reasonable person to believe that LHMCC had altered or chosen to depart from its signed contract requirement and had authorized Paynter to bind the company to the Agreement without signatures, despite the requirements contained in the Acknowledgment.  *Cf. Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶¶ 13–21, 179 P.3d 808 (concluding that the parties could, by their conduct, implicitly waive a contract provision requiring change orders to be put in writing and create an implied contract permitting changes to the original contract to be made orally).  However, looking at all of the circumstances surrounding Paynter's presentation of the Agreement to Anderson, we must agree with the district court that, as a matter of law, Anderson could not reasonably have considered the unsigned Agreement to constitute a binding contract.

¶15     It is clear from the format of the Agreement that this was not intended to be a final expression of the parties' intentions regarding any long-term contract between Anderson and LHMCC.  As noted above, the Agreement contained several blank spaces where certain important contract terms had yet to be filled in, including spaces for the termination date of the contract and the dates upon which Anderson would receive annual salary increases.  In the section outlining Anderson's duties, the language "[IS THERE ANYTHING ELSE WE OUGHT TO SPECIFY?]" confirms that the document was intended only as a discussion-promoting draft.  The Agreement was also clear on its face that, contrary to Paynter's representation, signatures *were* necessary to effectuate the Agreement.  It included signature blocks for both parties and an express

---

[2](...continued)
only conclude that "the contract" refers to the Agreement, which did include such a provision.  Because the Complaint sought only to enforce the Agreement, we do not consider any argument about whether Paynter's representations may have created an oral three-year employment contract separate and distinct from the Agreement itself.

requirement that any changes or modifications to its terms be accomplished "by an agreement in writing signed by the party against whom enforcement . . . is asserted."[3]

¶16 The combination of these factors, along with the Acknowledgment's requirement of a signed writing, convinces us that the district court properly entered summary judgment on Anderson's breach of contract claim. *See generally Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 22, 989 P.2d 1077 ("In determining whether the parties created an enforceable contract, a court should consider all preliminary negotiations, offers, and counteroffers and interpret the various expressions of the parties for the purpose of deciding whether the parties reached agreement on complete and definite terms."). This is particularly so in light of the Acknowledgment's indication that both parties expected any agreement to be contained in a signed writing. *See Engineering Assocs., Inc. v. Irving Place Assocs., Inc.*, 622 P.2d 784, 787 (Utah 1980) ("[I]f the parties make it clear that they do not intend that there should be legal consequences unless and until a formal writing is executed, there is no contract until that time.").

¶17 Anderson also brought a claim for breach of the "implied covenant of good faith and fair dealing [that] inheres in every contract." *See Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. "'Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract.'" *Iacono v. Hicken*, 2011 UT App 377, ¶ 18, 265 P.3d 116 (quoting *Eggett*, 2004 UT 28, ¶ 14); *see also Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 9, 266 P.3d 814. However, the implied covenant cannot "establish new rights or duties that are inconsistent with express contractual terms." *Young Living*, 2011 UT 64, ¶ 10 n.4.

¶18 Here, the only contract between Anderson and LHMCC was the at-will employment contract described in the Acknowledgment. The benefits of that contract

---

[3]We also note that, as a contract intended to be effective over a three-year period, the Agreement was likely required to be signed pursuant to Utah's statute of frauds. *See* Utah Code Ann. § 25-5-4(1) (2007) ("The following agreements are void unless the agreement, or some note or memorandum of the agreement, is in writing, signed by the party to be charged with the agreement: (a) every agreement that by its terms is not to be performed within one year from the making of the agreement . . . ."). We say "likely required" because the parties did not brief the statute of frauds issue.

were intended by the parties to be enjoyed by each party at will, with each party retaining the ability to terminate the employment relationship at any time. The implied covenant of good faith and fair dealing cannot inject a term of years into the contract when the parties expressly agreed to an at-will relationship terminable at any time. *Cf. Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (stating that the implied covenant cannot "change an indefinite-term, at-will employment contract into a contract that requires an employer to have good cause to justify a discharge"). LHMCC's termination of Anderson pursuant to the express terms of their at-will employment contract did not "do anything to injure the other party's right to receive the benefits of the contract." *See Iacono*, 2011 UT App 377, ¶ 18 (internal quotation marks omitted). Thus, the district court properly entered summary judgment on Anderson's claim that failure to pay him for the alleged three-year term constituted a breach of the implied covenant.

## II. Anderson's Other Claims

¶19 Anderson also brought claims for promissory estoppel and fraud, alleging that Paynter promised him a guaranteed three-year salary on behalf of Defendants and that the district court should enforce that promise and award fraud damages. The district court dismissed both of these claims, reasoning that Anderson could not have reasonably relied on Paynter's representations in the face of the at-will language of the Acknowledgment. *See generally Eldridge v. Farnsworth*, 2007 UT App 243, ¶ 30 n.11, 166 P.3d 639 (requiring reasonable reliance to establish promissory estoppel); *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 638 (Utah Ct. App. 1987) (requiring reasonable reliance on a misrepresentation).

¶20 Promissory estoppel and fraud claims both require that a plaintiff's reliance on a defendant's promise or statement be reasonable. To establish promissory estoppel, a plaintiff must have "acted with prudence and in reasonable reliance on a promise made by the defendant." *See Eldridge*, 2007 UT App 243, ¶ 30 n.11 (internal quotation marks omitted). For a fraud claim, the required showing is that the plaintiff relied on a misrepresentation, "acting reasonably and in ignorance of the statement's falsity." *See Conder*, 739 P.2d at 638. As to both claims, "[r]easonable reliance is generally a factual matter, within the province of the finder of fact, but in some cases it can be decided as a matter of law." *Timothy v. Keetch*, 2011 UT App 104, ¶ 10, 251 P.3d 848.

¶21    In this case, the district court dismissed Anderson's promissory estoppel and fraud claims on summary judgment. "Summary judgment is appropriate only where there are *no genuine issues of material fact* and the moving party is entitled to judgment as a matter of law." *Alpine Orthopaedic Specialists, LLC v. Intermountain Healthcare, Inc.*, 2012 UT App 29, ¶ 6, 271 P.3d 174 (emphasis added) (internal quotation marks omitted); *see* Utah R. Civ. P. 56(c). Thus, if this case falls within the general rule that the question of reasonable reliance is a "factual matter, within the province of the finder of fact," *see Timothy*, 2011 UT App 104, ¶ 10, then summary judgment was inappropriate and the district court should have allowed the question of Anderson's reasonable reliance to be determined by a finder of fact. We can uphold the district court's summary judgment rulings on Anderson's promissory estoppel and fraud claims only if there is no material fact question about Anderson's reasonable reliance—i.e., if the unreasonableness of Anderson's reliance on Paynter's representations "can be decided as a matter of law." *See id.*

¶22    Anderson's promissory estoppel and fraud claims are separate from his claims regarding the written Agreement. The estoppel and fraud claims rely on Anderson's allegation that Paynter, through the totality of his words and actions, represented to Anderson that he would be guaranteed three years' salary if he accepted the KJZZ Cafe position. The circumstances underlying this allegation, viewed in the light most favorable to Anderson, include Paynter's awareness that Anderson would not accept the anchor position without a three-year salary guarantee, Paynter's discussions with Anderson regarding his salary, and Paynter's representation that the written Agreement—with its three-year salary guarantee—did not need to be signed to be enforceable. The district court, however, determined that the Acknowledgment's language regarding at-will employment and the need for writings signed by Larry H. Miller rendered Anderson's ultimate reliance on Paynter to be unreasonable.

¶23    This assessment, however, does not account for some key language within the Acknowledgment. The Acknowledgment provides that "[LHMCC's] personnel policies are guidelines and not legally binding on [LHMCC], and . . . [LHMCC] reserves the right to depart from those policies or guidelines or change them at its sole discretion." Paynter was LHMCC's Director of News and Program Development, a title that suggests that he had both the authority and the responsibility to secure suitable on-air talent for KJZZ Cafe. Anderson might reasonably have assumed that Paynter was familiar with LHMCC's general policy on employment contracts as expressed in the

Acknowledgment, as well as its specific reservation of the right to change the requirements. If Paynter did personally purport that Anderson's salary would be guaranteed over three years, Paynter himself was violating LHMCC's policy *unless* LHMCC had actually made the decision "at its sole discretion" to depart from its policy and allow Paynter to make such a representation to Anderson. Under these circumstances, it might have been reasonable for Anderson to infer that LHMCC had in fact decided to depart from its usual policy and allow Paynter to orally bind the company to pay three years' guaranteed salary as compensation for Anderson's employment as a KJZZ Cafe anchor.[4]

¶24 Anderson's allegations thus present a factual question on reasonable reliance that cannot be decided as a matter of law. Because there is a "genuine issue[] of material fact" about the reasonableness of Anderson's reliance on Paynter's statements,[5] Anderson's promissory estoppel and fraud claims should have survived summary judgment. *See Alpine Orthopaedic Specialists*, 2012 UT App 29, ¶ 6. *See generally Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1067–69 (Utah 1996) (discussing situations where reasonable reliance may be decided as a matter of law). Accordingly, we reverse the district court's summary judgment on those claims.

---

[4]By contrast, our prior contract analysis of the Agreement relies largely on the form and language of that particular written but unsigned document. Thus, even if it may have been reasonable for Anderson to infer that Paynter had the authority to orally bind the company, it remained unreasonable to rely on the unfinished and unsigned Agreement as an enforceable expression of that authority.

[5]To the extent that the district court entered summary judgment on the fraud claim against LHMCC on the ground that LHMCC—as opposed to Paynter—did not make any representations to Anderson, the circumstances identified in this opinion also raise a factual question as to whether Paynter was speaking only for himself or for some or all of the rest of Defendants.

CONCLUSION

¶25    We affirm the district court's entry of summary judgment on Anderson's breach of contract claim because the Agreement was not a final expression of the parties' intent and was never signed by Larry H. Miller or anyone else.  With no three-year contract in place, Anderson could not use the implied covenant of good faith and fair dealing to enforce the alleged contract's three-year term, and summary judgment was also proper on that issue.  However, unresolved material issues of fact remain as to whether Anderson's reliance on Paynter's representations was reasonable.  We therefore reverse the district court's entry of summary judgment on Anderson's promissory estoppel and fraud claims and remand this matter for further proceedings.

_____
William A. Thorne Jr., Judge

-----

¶26    WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
Gregory K. Orme, Judge