FILED
United States Court of Appeals
Tenth Circuit

July 18, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN C. ROHR, an individual,

      Plaintiff–Appellant,

v.

ALLSTATE FINANCIAL SERVICES, a
Delaware limited liability company,

      Defendant–Appellee.

No. 12-4175
(D.C. No. 2:10-CV-00296-DS)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **EBEL**, and **HOLMES**, Circuit Judges.

John Rohr appeals from the district court's grant of summary judgment in favor of

Allstate Financial Services, LLC ("Allstate"). After resigning his position as an

Exclusive Financial Specialist selling financial products for Allstate because he failed to

meet minimum production requirements, Rohr asserts claims of promissory estoppel,

fraudulent inducement, and negligent misrepresentation. His claims are all based on oral

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

representations allegedly made by Allstate employee Mark Anderson that Rohr would earn $100,000 annually in commissions. The district court concluded that Rohr could not have reasonably relied on Anderson's oral representations. We agree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Allstate sells financial services products by affiliating with independent contractors called Exclusive Financial Specialists ("EFS"). Rohr began working as an EFS in Florida in 2006. His August 28, 2006 contract with Allstate stated that his "sole compensation" would be based on commissions, which due to the "inherent uncertainty of business conditions" could be increased or decreased by Allstate through written notice.

During his first year in Florida, Rohr earned over $90,000 in commissions. Depending on the time period, he was assigned to work with three to five Allstate insurance agencies, which provided him with referrals to customers interested in purchasing financial products.

In 2007, Rohr contacted Allstate regarding the availability of EFS positions in Utah. Allstate directed him to Mark Anderson, who worked at Allstate in Utah and whose responsibilities included affiliating with EFSs there. Anderson earned a base salary plus a commission based on the sale of Allstate financial products sold by EFSs within his territory.

In the fall of 2007, Anderson informed Rohr that Allstate had an EFS position

available in Utah County. According to Rohr, Anderson made various oral representations during these conversations guaranteeing him a successful career in Utah County. Specifically, Rohr states that when he informed Anderson that he needed to make $100,000 to relocate, Anderson replied that he would "easily make $100,000," that he would have "no problem" doing so, and that he would be given "adequate agencies and associations" to reach this amount in commissions. Rohr also avers that Anderson promised "a dozen times or more" that he would do "everything possible to help ensure [Rohr's] success."

Before moving to Utah, Rohr visited on two occasions and met with Anderson as well as with several Allstate insurance agencies that he would potentially work with if he were to take the Utah County EFS position. He testified that as a result of these visits, he "knew prior to coming to Utah" that the agencies he might be assigned to had "fairly low numbers." Despite the fact that he met with an agent who had never sold any financial services and an agency that had "fairly small" business opportunities, and that all the agencies he met with were "small," Rohr was nonetheless "hopeful" that he could "help stimulate their numbers and sales." He stated that even though one of the agencies included "a new Allstate agency owner" whose business was "not washed for financial services yet," he believed that the agency's business opportunities presented "low-hanging fruit that had not been picked."

According to Rohr, he repeatedly requested that Anderson provide him more information on the financial performance of the agencies to which he would be assigned

upon moving to Utah, but Anderson evaded these requests. However, Rohr admits that he did nothing further to verify Anderson's representations regarding his future income.

Prior to accepting the Utah EFS position, Rohr learned that the job was open because Larry Palmer, the previous EFS, had resigned. He assumed that Palmer's resignation was due to his failure to meet Allstate's production requirements.

In January 2008, Rohr accepted the EFS position and moved to Utah. On February 20, 2008, he signed an independent contractor agreement that was identical to the 2006 agreement that he had entered into upon commencing his employment with Allstate in Florida. Both agreements contained the following integration clause:

> This Agreement is the sole and entire agency agreement between the Company [Allstate] and you, and it supersedes and replaces any prior employment, agency, or other agreement between the Company [Allstate] and you. This Agreement also supersedes any prior oral statements and representations by the Company [Allstate] to you and any prior written statements and representations by the Company [Allstate] to you . . . .

Both agreements also provided that the only way to modify the agreement was through "a written agreement between the Company and you which expressly states that it modifies this Agreement." Accordingly, the agreements provided that "no oral statements, representations, or agreements will be effective to modify this Agreement."

Like his 2006 agreement, the 2008 agreement also stated that "the sole compensation" for the EFS position would be through commissions, the terms of which Allstate could modify upon written notice "due to the inherent uncertainty of business conditions." Both agreements were silent as to the number of agencies that Rohr would

-4-

affiliate with, the amount of referrals to customers that each agency would provide, and the production levels of each agency.

In Utah, Rohr was initially assigned to five Allstate insurance agencies, at least four of which he had met with before his move. When Rohr struggled to meet production requirements, Allstate assigned him to additional agencies; at one point he was affiliated with approximately ten agencies. Allstate also provided a list of accounts that were no longer associated with an Allstate agent and worked with Rohr to obtain more referrals from his existing agency relationships. Despite these efforts, Rohr failed to meet Allstate's minimum production requirements during 2008. He resigned his position in May 2009 rather than be terminated.

In March 2010, Rohr filed suit against Allstate alleging that Anderson's oral representations regarding his success and income of $100,000 constituted an oral agreement. His complaint contained five claims: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) promissory estoppel; (4) negligent misrepresentation; and (5) fraudulent inducement/intentional misrepresentation.

Allstate moved for summary judgment. The district court granted its motion, concluding that Rohr had conceded his breach of contract and good faith and fair dealing claims. The district court also determined that the remaining claims failed because each required a showing of reasonable reliance, and it was unreasonable, as a matter of law, for Rohr to have relied on the alleged representations made by Anderson. Rohr appealed.

**II**

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaramillo v. Adams Cnty. Sch. Dist. 14, 680 F.3d 1267, 1268 (10th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all facts and evidence in the light most favorable to the party opposing summary judgment. Morris v. City of Colo. Springs, 666 F.3d 654, 660 (10th Cir. 2012).

At issue in this appeal are three of the five claims originally asserted in the complaint: (1) promissory estoppel; (2) negligent misrepresentation; and (3) fraudulent inducement/intentional misrepresentation.[1] The parties agree that we look to Utah law in deciding Rohr's claims. See High Plains Natural Gas Co. v. Warren Petroleum Co., 875 F.2d 284, 288 (10th Cir. 1989) (in a diversity case "our task . . . is to interpret and apply the law of [Utah] as we believe the [Utah] Supreme Court would").

Under Utah law, each of Rohr's claims requires him to establish that he reasonably relied on Anderson's alleged statements. See Daines v. Vincent, 190 P.3d 1269, 1279 (Utah 2008) (fraudulent inducement requires a plaintiff to show that he "act[ed] reasonably and in ignorance of [a representation's] falsity" (quotation omitted)); Youngblood v. Auto-Owners Ins. Co.,158 P.3d 1088, 1092 (Utah 2007) (promissory

---

[1] Allstate argues that Rohr has not made a fraudulent inducement claim against Allstate; however, his complaint states a claim titled "Fraudulent Inducement / Intentional Misrepresentation," and the district court granted summary judgment on this claim.

estoppel requires the plaintiff to show he acted "in reasonable reliance on a promise made by the defendant" (quotation omitted)); Olsen v. Univ. of Phoenix, 244 P.3d 388, 390 (Utah Ct. App. 2010) (negligent and fraudulent misrepresentation claims require "reasonable reliance").

**A**

As an initial matter, Rohr asserts that reasonable reliance is typically a question of fact for the jury and there is a material dispute of fact rendering summary judgment inappropriate in this case. See, e.g., Conder v. A.L. Williams & Assoc., 739 P.2d 634, 638 (Utah Ct. App. 1987) ("Reasonable reliance must be considered with reference to the facts of each case, and is usually a question for the jury to determine."). However, in certain circumstances a court may determine the reasonableness of the reliance as a matter of law. Gold Standard, Inc. v. Getty Oil Co., 915 P.2d 1060, 1067 (Utah 1996) ("[T]here are instances where courts may conclude that as a matter of law, there was no reasonable reliance.").

Reasonable reliance may be decided as a matter of law when "there is no material fact question about [plaintiff's] reasonable reliance." Anderson v. Larry H. Miller Commc'ns Corp., 284 P.3d 674, 680 (Utah Ct. App. 2012). Such is the case here. Rohr makes the conclusory argument that there is a dispute of material fact regarding the reasonableness of his reliance; however, he fails to point to what material facts are

disputed and we find no such evidence in the record.[2] We therefore consider his

argument waived. See Harsco Corp. v. Renner, 475 F.3d 1179, 1190 (10th Cir. 2007)

("[A] party waives those arguments that its opening brief inadequately addresses."); see

also Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024-25 (10th Cir.

1992) (to avoid summary judgment, "sufficient evidence (pertinent to the material issue)

must be identified by reference to an affidavit, a deposition transcript or a specific exhibit

incorporated therein" because "we will not search the record in an effort to determine

whether there exists dormant evidence which might require submission of the case to a

jury").

## B

The majority of Rohr's opening brief is devoted to his contention that the

integration clause in the 2008 agreement does not bar his claims. We agree that the 2008

agreement, by itself, does not necessarily establish that his reliance was unreasonable as a

---

[2] We also do not rely on Rohr's factual assertions regarding prior EFSs' past performance in Utah that are based solely on his unverified complaint and unverified interrogatories and are otherwise not supported in the record. See Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005) (the substance of the evidence submitted at summary judgment must be admissible at trial); Comm. for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992) (unverified assertion by counsel does not "suffice for evidence or fact" for purposes of summary judgment); Parkinson v. Cal. Co., 233 F.2d 432, 438 (10th Cir. 1956) ("Where a complaint is unverified and plaintiff does not traverse defendants' affidavits or other proof showing that there is no claim upon which relief can be granted, summary judgment is proper.").

matter of law. However, the district court did not rely solely on the 2008 agreement in holding that his reliance was unreasonable; rather, it based its determination on a number of undisputed, material facts.

We agree with the district court and conclude that the following undisputed facts render Rohr's reliance unreasonable: (1) Rohr's past experience working as an EFS with Allstate on commission provided him notice that he would work on commission as an EFS in Utah; (2) the 2006 EFS independent contractor agreement informed Rohr, before he moved to Utah, that the agreement could not be modified orally and that his compensation was based on commission of an unspecified amount that was subject to change with written notice due to the uncertainties of the market; (3) Rohr would have concluded that the 2006 EFS independent contractor agreement would continue after his transfer or that he would sign a new, but identical, agreement because the 2006 agreement was a generic, form contract; (4) Rohr's personal visits with the agencies in Utah made him aware of their low production before his move; and (5) his failure to investigate Anderson's statements about his future income, after the aforementioned facts placed him on notice that he should do so.

Rather than addressing these factors, Rohr instead makes several arguments based solely on the relevancy of the 2008 EFS agreement's integration clause. He argues that the 2008 agreement's integration clause is legally irrelevant with respect to his claims of fraud and negligent misrepresentation, citing Ong International (U.S.A.) Inc. v. 11th Avenue Corp., 850 P.2d 447, 452 n.6 (Utah 1993), and the Restatement (Second) of

Contracts § 196 for the proposition that parties cannot contract around a fraud defense. But Rohr misses the point: All three of his claims require a showing of reasonable reliance. And the district court did not grant summary judgment on the basis that the 2008 contractual provisions released Allstate from liability from fraud; rather, it held that Rohr failed to establish reasonable reliance as required to assert a fraudulent inducement claim. See Daines, 190 P.3d at 1279.

In the alternative, Rohr argues that even if we do consider the 2008 agreement's integration clause, it is insufficient to render his reliance unreasonable. He relies on Anderson, 284 P.3d 674, in which the Utah Court of Appeals held that a written agreement stating that employment was at-will did not render the plaintiff's reliance on an oral promise of three years' employment unreasonable. In that case, the court determined that the agreement at issue contained "key language" that explicitly reserved the employer's right to depart from the agreement at its discretion and made no mention that changes must be in writing. Id. at 680. Therefore, the court held that the employer's oral statements were consistent with the agreement because the company representative who allegedly made the statements had the authority to alter the agreement. Id. at 680-81.

We reject Rohr's contention that similar to the facts in Anderson, his 2008 agreement with Allstate expressly permitted Allstate to modify the compensation that it paid him and was silent as to his affiliation with agents and the amount of referral business he was guaranteed; therefore, it was reasonable for him to rely on Anderson's

-10-

oral statements because they were consistent with the agreement.  But the 2006 agreement, which put Rohr on notice of the identical terms of the 2008 agreement, contained no language permitting an Allstate employee to unilaterally modify the terms of the written agreement as was the case in Anderson.  To the contrary, both agreements contained express language stating that it was the "sole and entire agency agreement," and that it "supersedes any prior oral statements and representations."  Both agreements also provided that "[n]o representative of the Company" had authority to alter the terms of the agreements "except by a written agreement between the Company and you which expressly states that it modifies this Agreement."  Moreover, the agreements stated that the sole compensation for the EFS position would be commissions, the terms of which Allstate could modify with written notice "due to the inherent uncertainty of business conditions."

The district court relied on Gold Standard, 915 P.2d 1060, in which the court held that "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information."  Id. at 1068.  Rohr argues that this holding does not apply because Anderson's oral statements did not contradict the contract.  Nevertheless, the contracts explicitly superseded all oral representations.  Further, the presence or lack of a direct conflict is not dispositive under Gold Standard.  Instead, that case establishes that a plaintiff "[can]not reasonably rely on [a] promise in light of [other information that] explicitly indicated that the situation was not as [the plaintiff] understood it to be."  Id. at 1067.  In light of the other information known to Rohr regarding his future income, it was

unreasonable for him to believe that he was guaranteed $100,000 in commissions.

We similarly reject Rohr's reliance on Robinson v. Tripco Investment, Inc., 21 P.3d 219 (Utah Ct. App. 2000). In Robinson, the defendant made objective misstatements about the currently existing condition of a building that was for sale. Id. at 224. In contrast, Anderson's alleged statements were opinions predicting uncertain future conditions. "A misrepresentation of intended future performance is not a presently existing fact upon which a claim for fraud can be based unless a plaintiff can prove that the representor, at the time of the representation, did not intend to perform the promise and made the representation for the purpose of deceiving the promisee." Andalex Res., Inc. v. Myers, 871 P.2d 1041, 1047 (Utah Ct. App. 1994) (quotation omitted). Moreover, statements of opinion that are not capable of being proven true or false cannot form the basis of a claim for fraudulent misrepresentation. Boud v. SDNCO, Inc., 54 P.3d 1131, 1138-39 (Utah 2002). And representations of value "do not ordinarily constitute fraud" even if they later turn out to be wrong because they are usually regarded as "mere expressions of opinion . . . involving matter of judgment and estimation as to which men may differ." Wright v. Westside Nursery, 787 P.2d 508, 512 (Utah Ct. App. 1990) (quotation omitted).

Each of Anderson's alleged representations concerned predictions, rather than claims about current conditions. Both Rohr and Allstate knew that existing production numbers in Utah were low and hoped that Rohr would be able to increase production, yet neither could have actual knowledge about future events. And the record does not

-12-

support the contention that Anderson intentionally misrepresented known facts or failed to do what he could to ensure Rohr's success. The record belies this contention: it was in Anderson's interest that Rohr succeed because Anderson's own income was tied in part to the sale of financial products sold by EFSs within his territory. And when Rohr was struggling to meet his production requirements, Anderson took steps to assist him, such as assigning him to additional agencies.

Similarly unavailing is Rohr's argument that because he relied on Anderson's statements by moving to Utah before he signed the agreement, we need not consider its integration clause in our analysis. Like the district court, we treat the 2008 agreement as relevant, but not dispositive, as to whether Rohr's reliance was reasonable. Prior to moving to Utah, Rohr must have thought that either his 2006 EFS agreement would continue or that an updated version of the generic form agreement for the EFS position would govern his new position in Utah. And the 2006 agreement stated that compensation was based on commissions that were subject to change only by written notice, and that oral agreements were not part of the employment contract.

We conclude that the district court did not err in considering the 2008 agreement along with the identical 2006 agreement and the other record evidence to determine that Rohr's reliance was unreasonable as a matter of law. See Gold Standard, 915 P.2d at 1067 (holding that when there is notice that "the situation was not as [the plaintiff] understood it to be," reliance is unreasonable).

## C

Finally, Rohr challenges the district court's conclusion that he was put on notice that further investigation of Allstate's alleged misrepresentations would be prudent and that his failure to do so rendered his reliance unreasonable. In general, "a plaintiff may justifiably rely on positive assertions of fact without independent investigation"; however, "where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, [a plaintiff] is required to make an investigation of his own." Conder, 739 P.2d at 638-39. A plaintiff asserting false representation has "the duty of exercising such degree of care to protect his own interests as would be exercised by an ordinary, reasonable and prudent person under the circumstances; and if he fails to do so, is precluded from holding someone else to account for the consequences of his own neglect." Gold Standard, 915 P.2d at 1068 (quotation omitted).

We conclude that Rohr had ample warning that he was not guaranteed $100,000 in commissions, giving rise to a duty to investigate Anderson's representations under Conder, 739 P.2d at 638-39. For example, Rohr knew that his income would be based on commissions, an inherently uncertain form of income. He also met with five different Allstate agencies before he decided to move and personally concluded from his meetings that their numbers were "fairly low." Because Rohr "ha[d] discovered something which should serve as a warning that he [was] being deceived, [he was] required to make his

-14-

own investigation." Id. at 638.

Rohr principally relies on Conder to argue that he lacked a duty to investigate. In Conder, the plaintiff accepted a position in reliance on his employer's oral promise that he would be able to work in the areas of securities and investment at a later date, despite having signed an agreement that limited his work to selling insurance. Id. at 636. The court held that he had no duty to investigate because the record did not contain contradictory information that put him on notice that the oral assurances were false. Id. at 639. In the case at bar, there was ample evidence suggesting to an "ordinary, reasonable and prudent person under the circumstances," Gold Standard, 915 P.2d at 1068 (quotation omitted), that Rohr was not guaranteed $100,000 in income.

The factual circumstances presented in the other cases Rohr relies on also differ materially from those before us. In two of the cases he cites, there were no facts that served as a warning to the plaintiffs to investigate further. See Ong Int'l (U.S.A.) Inc., 850 P.2d at 453 (contrary information was "not easily ascertainable"); Timothy v. Keetch, 251 P.3d 848, 851 (Utah Ct. App. 2011) ("Nothing in the transaction, in Defendants' representations, in [plaintiff's] visit to the ranch, or in the inquiries Plaintiffs made suggested anything that would serve as a warning . . . ." (quotation omitted)). And in the third, Robinson, 21 P.3d 219, there was a material question of fact regarding the duty to investigate because the defendant "held himself out as someone with superior knowledge . . . and then lent support to his representations by providing an inspection report." Id. at 225. By contrast, Anderson's representations were not based on a

-15-

technical report or expert evidence, and the asymmetry of access to information in Robinson is lacking here given Rohr's previous work as an EFS and his visits to Utah before his move.

Because Rohr had sufficient information to "serve as a warning that he [was] being deceived . . . [he was] required to make his own investigation." Condor, 739 P.2d at 638. He is thus "precluded from holding someone else to account for the consequences of his own neglect." Gold Standard, 915 P.2d at 1068 (quotation omitted). We conclude that Rohr's reliance on Anderson's statements, without further investigation, was unreasonable.

## III

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge