**2015 UT App 134**

## THE UTAH COURT OF APPEALS

STEVEN ANDERSON,
Plaintiff and Appellant,

*v.*

LARRY H. MILLER COMMUNICATIONS
CORPORATION AND DEAN PAYNTER,
Defendants and Appellees.

Opinion
No. 20130997-CA
Filed May 29, 2015

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 090909953

April L. Hollingsworth, Attorney for Appellant

Janet Hugie Smith, Scott A. Hagen, and Kimberly A.
Child, Attorneys for Appellees

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and JAMES Z. DAVIS concurred.

PEARCE, Judge:

¶1     Steven Anderson appeals from a jury verdict and judgment in favor of Larry H. Miller Communications Corporation (LHMCC) and Dean Paynter on Anderson's claims of fraud and promissory estoppel. We affirm.

## BACKGROUND

¶2     In 2007, Anderson left his teaching job of twenty-eight years to host KJZZ Café, a morning television program. KJZZ Café aired on the KJZZ television station, which LHMCC owns. Although Anderson and LHMCC never executed a written

contract, Anderson took the KJZZ Café job believing that he was guaranteed an $80,000 annual salary for three years regardless of whether KJZZ Café was successful. This belief resulted from Anderson's interactions with Paynter, who was LHMCC's Director of News and Program Development.

¶3 KJZZ Café was not successful. In November 2008, LHMCC cancelled the show and terminated Anderson's employment. Anderson sued LHMCC and Paynter for the remainder of the three years' salary to which he believed he was entitled, alleging breach of contract, promissory estoppel, fraud, and breach of the covenant of good faith and fair dealing. The district court granted summary judgment to LHMCC and Paynter on all of Anderson's claims. The district court concluded that no contract existed to support the breach of contract and covenant of good faith and fair dealing claims. The district court further concluded that the promissory estoppel and fraud claims could not survive, because Anderson had signed an acknowledgement that he was an at-will employee and because LHMCC had never represented that Anderson would have a salary guarantee.

¶4 Anderson appealed from the district court's ruling, and this court affirmed in part and reversed in part. *See Anderson v. Larry H. Miller Commc'ns Corp.*, 2012 UT App 196, 284 P.3d 674.[1] We affirmed the district court on the contract-related claims, concluding that the only contract between the parties was one of at-will employment and that the covenant of good faith and fair dealing could not "inject a term of years into the contract when

---

1. *Anderson v. Larry H. Miller Communications Corp.*, 2012 UT App 196, 284 P.3d 674, contains a substantially more detailed recitation of the background facts regarding Anderson's decision to work for LHMCC. *See id.* ¶¶ 2–7. We repeat those facts here only to the extent they are helpful to an understanding of the issues in this appeal.

the parties expressly agreed to an at-will relationship terminable at any time." *Id.* ¶¶ 12–18. However, we reversed the district court on the promissory estoppel and fraud claims, holding that there was a material question of fact as to Anderson's reasonable reliance on Paynter's alleged statements and as to whether Paynter made those statements on LHMCC's behalf. *See id.* ¶¶ 19–24.

¶5 After remand to the district court, the matter proceeded to a trial. About two weeks before trial, Anderson filed a motion seeking leave to amend his complaint to add a claim for intentional interference with economic relations. Several days before trial, he filed a motion to have his promissory estoppel claim tried to a jury instead of to the court. The district court denied both motions.

¶6 Trial commenced as scheduled, with a jury empanelled to consider Anderson's fraud claim. The district court heard the promissory estoppel claim as an equitable claim. The district court interrupted Anderson's counsel's opening statement several times, once upon objection by opposing counsel and at least twice on its own initiative. The first interruption came after Anderson's counsel referred to fraud as a "moral" and "religious" tenet, described fraud as "bamboozl[ing] someone," and declared that it was her "great honor and privilege to . . . be able to represent people like Steve Anderson, whose biggest problem was [that] he trusted someone who was untrustworthy." The district court interrupted, stating, "Counsel, I think you're going a little beyond opening statement and argu—making an argument to the jury and I don't think that's appropriate." Anderson's counsel inquired if she could "talk about the role of the jury," and the district court responded, "[Y]ou can talk to the jury on your argument in closing, but you're not to make your closing argument at the

beginning of the case." The district court also informed counsel that it had "already told [the jurors] what their role is."[2]

¶7     The next interruption occurred after Anderson's counsel began describing her "susp[icion] that the defense is going to tell you that Mr. Anderson wasn't really harmed by what happened here and therefore, you shouldn't award him anything." After Anderson's counsel stated that "the defendants are not absolved of liability because of Mr. Anderson's resourcefulness" and "the fact that [Anderson] was able to claw his way back from a situation that [LHMCC and Paynter] put him in has nothing to do with their liability," defense counsel objected that Anderson's counsel was making argument. The district court sustained the defense objection without comment and without permitting Anderson's counsel to respond to the objection.

¶8     Anderson's counsel immediately changed topics and began talking about Larry H. Miller,[3] the founder and namesake of LHMCC:

> [T]his case is not about Larry H. Miller as a man. He was a very sick man when all this went down and he died shortly thereafter. And from everything that my client and I know about the man, this is how I do not believe he would do things and . . . .

At this point, the district court interrupted Anderson's counsel and stated, "Counsel, I'm going to stop you here. I told you not

---

2. Anderson characterizes this exchange as two interruptions, while LHMCC and Paynter characterize it as one. The dispute is not material to our analysis.

3. Larry H. Miller was a popular Utah business personality who died in 2009.

to make arguments, we've already instructed this jury that they are not to consider passion, prejudice or sympathy when making a decision and for you to argue that is improper, clearly improper, you know it." Anderson's counsel then concluded her opening statement with a statement that, at the end of trial, she would be asking the jury to find in favor of Anderson.

¶9     After an opening statement from LHMCC and Paynter, the parties presented evidence, primarily through Anderson's and Paynter's testimony. During Anderson's counsel's questioning, the district court sustained multiple objections from defense counsel, often without allowing Anderson's counsel an opportunity to respond. The district court also disallowed some of Anderson's counsel's questions without awaiting an objection from LHMCC and Paynter.

¶10     On the morning of the second day of trial, Anderson's counsel cited the court's evidentiary rulings in renewing Anderson's motion for a jury trial on the promissory estoppel claim. The district court heard the renewed motion outside the presence of the jury. Anderson's counsel stated that one basis for the renewed motion was that the court had "exhibited some hostility towards [Anderson's] case." The district court responded,

> I will tell you right now, I don't have hostility towards your case, I have hostility, if you will call it that, when I make a ruling, yet you continue to argue with me. And you made—clearly, you made inappropriate arguments to the jury, that's why I stopped you. You are not to make a closing argument for an opening statement, you are not to appeal to the passion or prejudice of a jury, which you did, and I told you you couldn't, we have an instruction that says you can't do that and you did it anyway. And when I make a ruling you argue with me every time, you're always arguing with

> me. I don't have hostility towards the case, but your attitude and your conduct is what's causing the problem here.

Anderson's counsel replied by expressing her concern that she had not been allowed to respond to objections. The district court assured her that it would allow her such an opportunity going forward. The parties presented the remainder of their evidence without incident.

¶11    When it came time to instruct the jury on the fraud claim, the parties disputed the proper measure of damages. Anderson argued that he was entitled to expectation damages, which he defines in his appellate brief as "the salary he was promised for the two remaining years for which he was not paid by LHMCC, minus the additional salary he earned by going back [to teaching] full-time, which offset the salary loss from LHMCC." LHMCC and Paynter argued that Anderson should be limited to reliance damages, or the difference between what he actually made from all employment over the relevant three-year period and what he would have made had he remained at his teaching job. The court instructed the jury that Anderson's fraud damages, "if any, are the difference between the compensation he made before he accepted the KJZZ job and the compensation that he made at all jobs after he accepted the KJZZ job, including the compensation he made at the KJZZ job."

¶12    The jury found that Anderson had not proven his fraud claim. Specifically, the jury answered "No" on the special verdict form to questions asking, "Do you find by clear and convincing evidence that [the defendants] committed fraud on Steve Anderson?" The jury did not answer the remaining questions on the special verdict form, which dealt with causation, damages, and punitive damages.

¶13    After the jury returned its verdict, the district court submitted one element of Anderson's promissory estoppel

claim—the question of Anderson's reasonable reliance—to the jury to assist the court in resolving that claim. The district court allowed the parties a chance to address the jury on the reasonable-reliance issue, and then sent the jury back into deliberations with a second special verdict form stating, "Please answer the following question based upon the instructions the Court has provided, as modified. Do you find by a preponderance of the evidence that Steve Anderson reasonably relied upon the representations of Dean Paynter and/or KJZZ TV?" The jury answered the question, "No."

¶14 After trial, the district court issued its decision dismissing Anderson's promissory estoppel claim with prejudice. The district court found that Paynter had never promised Anderson a guaranteed three-year salary and stated that, "[t]o the extent that Mr. Anderson may have misunderstood Mr. Paynter to be making a guarantee of three years' employment or three years' salary, the Court finds, in accordance with the jury's advisory verdict, that any reliance on such a statement was not reasonable."

¶15 Anderson appeals from the final judgment in favor of LHMCC and Paynter.

ISSUES AND STANDARDS OF REVIEW

¶16 Anderson argues that the district court violated his due process right to a fair trial by repeatedly interrupting his testimony and his counsel's presentation of the case and by improperly sustaining defense objections while denying Anderson the opportunity to respond to them. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (citation and internal quotation marks omitted).

¶17    Anderson argues that the district court made numerous erroneous evidentiary rulings, both on its own initiative and in response to defense objections, often without giving Anderson an opportunity to respond. "We review the district court's evidentiary rulings under an abuse of discretion standard." *Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 8, 240 P.3d 107 (citation and internal quotation marks omitted). However, error in the district court's evidentiary rulings will result in reversal only if the error is harmful. *Woods v. Zeluff*, 2007 UT App 84, ¶ 5, 158 P.3d 552.

¶18    Anderson argues that the district court violated his constitutional right to a jury trial on his promissory estoppel claim by refusing Anderson's request to try that claim to the jury rather than to the bench. "Whether there is a right to a jury trial is a question of law that we review for correctness." *Skypark Airport Ass'n, LLC v. Jensen*, 2013 UT App 229, ¶ 13, 311 P.3d 575 (citation and internal quotation marks omitted). However, in cases that are not clearly legal or clearly equitable, it is for the district court to determine "whether an issue is one in equity or one in law wherein the party can insist on a jury as a matter of right," and we will not disturb that determination absent a showing that it is "patently in error or an abuse of discretion." *Id.* (citation and internal quotation marks omitted).

¶19    Anderson argues that the district court's jury instructions misstated the law on the measure of fraud damages. "The correct measure of damages in a particular case is a question of law." *Richards v. Brown*, 2009 UT App 315, ¶ 47, 222 P.3d 69, *aff'd on other grounds*, 2012 UT 14, 274 P.3d 911. To obtain relief on appeal, Anderson must demonstrate "both that the instruction was inaccurate and that there is not a mere possibility, but a reasonable likelihood that the error affected the result." *Stevensen 3rd E., LC v. Watts*, 2009 UT App 137, ¶ 28, 210 P.3d 977 (citation and internal quotation marks omitted).

¶20 Finally, Anderson argues that the district court erred in denying his motion to amend his complaint to add a claim of intentional interference with economic relations. "We review a district court's denial of a plaintiff's motion to amend a complaint for abuse of discretion." *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 13, 221 P.3d 234.

ANALYSIS

## I. Anderson's Due Process Right to a Fair Trial

¶21 Anderson argues that "the district court's treatment of his case, his testimony, and his counsel was so damaging to his credibility and to the presentation of evidence that it denied him a right to a fair trial, in violation of his due process rights." Anderson points to the district court's multiple interruptions of his counsel's opening statement, one of which included the admonition in front of the jury that her actions were "clearly improper, [and] you know it." Anderson also relies on the district court's repeated sustaining of defense objections, without allowing Anderson's counsel to respond and often accompanied by allegedly unfavorable comments directed at Anderson or his counsel.[4] Finally, Anderson relies on the district court's statement to Anderson's counsel—outside the presence of the jury—that "your attitude and your conduct is what's causing the problem here." Anderson concludes that the district court's "negative perception of Mr. Anderson and his counsel was palpable at trial."

---

4. These comments included the district court's admonition to Anderson's counsel not to interrupt opposing counsel and its statement to Anderson that "it's against the rules for you to tell what somebody else said to you."

¶22 Both the United States Constitution and the Utah Constitution guarantee the right to due process. *See* U.S. Const. amends. V, XIV; Utah Const. art. I, § 7. The Utah Supreme Court has stated that "every person who brings a claim in a court . . . has a due process right to receive a fair trial in front of a fair tribunal." *Bunnell v. Industrial Comm'n*, 740 P.2d 1331, 1333 (Utah 1987). We evaluate a due process claim under the totality of the circumstances, *cf. State v. Clark*, 2014 UT App 56, ¶ 41, 322 P.3d 761, and "due process demands a new trial when the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair," *Bunnell*, 740 P.2d at 1333 n.1.

¶23 In support of his argument, Anderson cites *Bunnell v. Industrial Commission*, 740 P.2d 1331 (Utah 1987). There, the Utah Supreme Court reversed a denial of disability benefits due to the conduct of the administrative law judge (the ALJ) who had presided over the hearing. *Id.* at 1333–34. The ALJ "chilled the witnesses" to the point that the witnesses began to preface their answers with statements such as "I don't know whether this would be allowed in the record or not" and "[a]m I out of line." *Id.* at 1334 (alteration in original) (internal quotation marks omitted). The ALJ indicated that he did not need to examine medical records because he had already decided to rule against the plaintiff. The ALJ also refused to listen to closing argument. The supreme court ultimately concluded that the plaintiff's due process right to a fair trial was violated because

> the administrative law judge insisted on strict application of the hearsay rule although that rule does not apply in administrative hearings; . . . plaintiff's witnesses were inhibited and intimidated by the judge's conduct, and felt defensive and hesitant to testify; the judge interfered with plaintiff's counsel's ability to make a record and argue the evidence; and the judge

gave the appearance of having decided the case without even considering the medical records.

*Id.* at 1333.[5]

¶24 After examining the totality of the circumstances and reviewing the trial transcript, we are not left with the impression that Anderson's trial was unfair. Indeed, the district court's actions in this case do not rise (or perhaps fall) to the level *Bunnell* describes. There is no indication in the record that the district court prevented Anderson from presenting his claims, failed to consider Anderson's evidence, or caused witnesses to feel intimidated or self-censor their testimony for fear of provoking the district court's ire. We are sympathetic to Anderson's complaint that he faced a sometimes sharp and critical response from the bench, but we are nevertheless satisfied that he received "a fair trial in front of a fair tribunal." *See id.*

¶25 Courts have rejected unfair-trial claims under circumstances similar to this case. In *United States v. Mobile Materials, Inc.*, 881 F.2d 866 (10th Cir. 1989), the appellants argued that "they were denied a fair trial because the judge was impatient and angry with defense counsel throughout the trial." *Id.* at 876–77. The appellants also claimed that the judge's manner conveyed the impression that he thought the case unimportant and that they were not allowed to argue adverse

---

5. Two justices concluded that the ALJ's conduct did not warrant a new proceeding. *See Bunnell v. Industrial Commission*, 740 P.2d 1331, 1336 (Utah 1987) (Zimmerman, J., dissenting) ("I think the majority should be cautious lest the grounds that are used today to overturn this proceeding in the name of fairness become a standard attack upon administrative or judicial rulings whenever some basis can be found in the record for arguing that the judge's behavior was less than ideal on any given day.").

rulings. The Tenth Circuit Court of Appeals rejected the unfair-trial claim, stating that parties are entitled to a "fair trial, not a perfect one." *Id.* at 877; *see also United States v. Erickson*, 561 F.3d 1150, 1167 (10th Cir. 2009) (stating that even where trial court comments "suggested anger, or at least impatience," with counsel, "we can presume that jurors are capable of distinguishing between a judge's view of particular behavior by counsel and the judge's view of the merits of the case"); *United States v. DiTommaso*, 817 F.2d 201, 220 (2d Cir. 1987) ("[R]eversal is not mandated where . . . rebukes of defense counsel reflected not upon the merits of the case but rather on the way it was being handled.").

¶26    The district court's actions in this matter are similar to those examined in the cases rejecting claims of unfairness and are considerably less objectionable than the actions of the ALJ in *Bunnell*. The district court's actions and comments fall within the permissible level of give and take inherent in our adversarial trial process. Under the totality of the circumstances, we are not "left with the abiding impression that a reasonable person would find [Anderson's trial] unfair." *See Bunnell*, 740 P.2d at 1333 n.1. Accordingly, we conclude that Anderson received a trial that comported with the requirements of due process.

## II. Evidentiary Rulings

¶27    Anderson argues that the district court's pattern of defense-favorable evidentiary rulings over the course of trial represents an abuse of discretion warranting reversal for a new trial. Anderson alleges that "[t]he court rarely let Mr. Anderson's counsel respond to [defense] objections, but even when [his counsel] was allowed to respond, the court ultimately upheld the objections despite argument and the merits of the objection." Anderson also argues that what he characterizes as the district court's "sua sponte objections" were improper. Thus, Anderson argues errors of both substance and procedure.

¶28   As to the substance of the district court's evidentiary rulings, Anderson's appellate brief asserts that "[t]he occasions in which the trial court improperly sustained objections are too numerous to address each one substantively."[6] Anderson complains generally about the district court's hearsay rulings, arguing that the court failed to consider whether particular testimony was being offered for the truth of the matter asserted, that it "simply excluded any of Mr. Anderson's testimony about what anyone else said to him," and that it directed Anderson "not to testify about what anyone else told him." Anderson argues that "[t]hese rulings were 'beyond the limits of reasonability,' and therefore merit reversal." (Quoting *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 57, 82 P.3d 1076.) Anderson also identifies allegedly erroneous rulings premised on speculation, double hearsay, argumentativeness, and lack of foundation. Finally, Anderson appears to raise the doctrine of cumulative error, arguing that "the combined effect of the 20 or so incidents described in the facts [section of Anderson's brief] so influenced the presentation of evidence that the only effective remedy is to remand for a new trial." *See generally Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 72 n.30, 320 P.3d 1037 (discussing cumulative error doctrine).

¶29   As to the district court's alleged procedural errors, Anderson asserts that "the many occasions in which the court sustained objections [without] waiting for a basis for the objection or without giving Mr. Anderson's counsel [an] opportunity to respond were each an abuse of discretion, notwithstanding the court's view that it was entitled to make such rulings 'when it's obvious.'" Anderson also argues that the court should not have made evidentiary rulings on its own initiative.

---

6. Anderson identifies over twenty-five separate evidentiary rulings as allegedly objectionable.

¶30    The district court "has broad discretion to admit or exclude evidence." *Avalos v. TL Custom, LLC*, 2014 UT App 156, ¶ 19, 330 P.3d 727. To obtain relief based on alleged errors in the district court's evidentiary rulings, Anderson must shoulder the burden of demonstrating both error by the district court and prejudice, i.e., "that there is a reasonable likelihood that a different result would have been reached absent the error." *R.B. v. L.B.*, 2014 UT App 270, ¶ 39, 339 P.3d 137 (citation and internal quotation marks omitted). Anderson has not met this burden, particularly as to the requirement that he show prejudice resulting from any erroneous evidentiary rulings the district court may have made.

¶31    We agree with LHMCC and Paynter's general position that many of the rulings Anderson identifies appear to be at least potentially correct. However, even assuming error as to some or even all of the challenged evidentiary rulings, Anderson has not demonstrated that the disallowed testimony was reasonably likely to have led to a more favorable result. Many of the exchanges that Anderson identifies involved testimony that appears tangential, at best, to the gravamen of his claims. Despite the adverse rulings, Anderson was often allowed to present the desired testimony either by rephrasing the question (or answer) or after the district court reconsidered its ruling. Further, the exchanges about which Anderson complains represent only a small fraction of the questions and answers presented over two days of testimony.

¶32    Ultimately, by keeping his arguments at a high level of generality, Anderson has not persuaded us that any evidentiary errors below were prejudicial to his claims. He has not identified any "smoking gun" or important evidence that was wrongfully excluded, and it appears that he was allowed to adequately present his version of events in support of his claims. We are not convinced that any evidentiary errors the district court may have made, considered alone or together, created the "likelihood of a different outcome . . . sufficiently high as to undermine our

confidence in the verdict." *See Avalos*, 2014 UT App 156, ¶ 24 (citation and internal quotation marks omitted). Accordingly, Anderson has not demonstrated any prejudicial errors that would warrant reversal of the judgment below. *See id.*

### III. Jury Trial of Anderson's Promissory Estoppel Claim

¶33 Anderson argues that the district court violated his right to a jury trial by refusing to allow the jury to consider his promissory estoppel claim. Anderson further argues that this error was not cured when the district court submitted one element of the promissory estoppel claim—whether Anderson had proven by a preponderance of the evidence that he had reasonably relied on a promise by LHMCC or Paynter—to the jury after it had returned a defense verdict on Anderson's fraud claim.

¶34 We are not persuaded that the district court erred in conducting a bench trial of Anderson's promissory estoppel claim. Trial to the bench, rather than to a jury, is the appropriate method to resolve claims that sound in equity. *Kenny v. Rich*, 2008 UT App 209, ¶¶ 37–38, 186 P.3d 989. Thus, to demonstrate a violation of the right to a jury trial, Anderson must establish that the district court erred in determining that his promissory estoppel claim was an equitable one. Where the legal or equitable nature of a claim is not clear, the district court is granted discretion to classify the claim as legal or equitable, and we have previously held that we will not overturn such a ruling absent an abuse of that discretion. *See Skypark Airport Ass'n, LLC v. Jensen*, 2013 UT App 229, ¶ 13, 311 P.3d 575.[7]

---

7. This standard of review has existed in Utah case law since 1966. *See Sweeney v. Happy Valley, Inc.*, 417 P.2d 126, 128-29 (Utah 1966). This court has employed the standard as recently as 2013. *See Skypark Airport Ass'n, LLC v. Jensen*, 2013 UT App 229, ¶ 13,

(continued…)

¶35    As the Utah Supreme Court explained in *Sweeney v. Happy Valley, Inc.*, 417 P.2d 126 (Utah 1966), this inquiry is fact driven and must necessarily be performed on a case-by-case basis:

> In circumstances where doubt exists as to whether the cause should be regarded as one in equity, or one in law wherein the party can insist on a jury as a matter of right, the trial court should have some latitude of discretion. In making that determination it is not bound by the ostensible form of the action, nor by the particular wording of the pleadings. It may examine into the nature of the rights asserted and the remedies sought in the light of the facts of the case to ascertain which predominates; and from that determination make the appropriate order as to a jury or non-jury trial.

*Id.* at 128–29. Here, the district court evaluated Anderson's promissory estoppel claim and elected not to depart from the general rule under Utah law that such claims are equitable in nature. We will not disturb the district court's ruling unless it was "patently in error or an abuse of discretion." *Id.* at 129.

---

(continued…)

311 P.3d 575. At first blush, it appears that the question of whether a claim should be characterized as legal or equitable more closely resembles a question of law to be reviewed for correctness. What *Sweeney* and *Skypark* appear to recognize is that a category of cases exists that will require the district court to look beyond a party's characterization of the relief sought. In those cases, the district court must examine what, on the facts presented, the party is actually asking the court (or jury) to do and whether the relief the party seeks is more appropriately characterized as legal or equitable. It appears that those types of cases have motivated Utah courts to apply a more deferential standard of review.

¶36   "Promissory estoppel is an equitable claim for relief which is normally tried to the bench." *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct. App. 1993); *see also Tolboe Constr. Co. v. Staker Paving & Constr. Co.*, 682 P.2d 843, 849 (Utah 1984). Despite this general rule, Anderson argues that his promissory estoppel claim is, in whole or in part, a legal claim that should have been tried to the jury. Anderson contends that even if his estoppel claim as a whole is equitable, it shares at least one factual issue—reasonable reliance—with Anderson's legal claim for fraud. Anderson contends that because of this commonality, he had a constitutional right to have the estoppel claim tried to the jury. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) ("When legal and equitable claims are joined in the same action, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." (citation and internal quotation marks omitted)). Anderson also asserts that his estoppel claim is legal, not equitable, because it asks for money damages. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962) (noting that "insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal").

¶37   LHMCC and Paynter do not directly respond to Anderson's arguments. Instead, they rely on various restatements of the general rule that promissory estoppel is an equitable claim for which there is no right to a jury trial. *See Andreason*, 848 P.2d at 174; *see also Shields v. Thomas*, 59 U.S. 253, 262 (1855); *Tolboe Constr. Co.*, 682 P.2d at 845–46; *Romrell v. Zions First Nat'l Bank, NA*, 611 P.2d 392, 394 (Utah 1980). LHMCC and Paynter's reliance on the general rule is not particularly helpful here, as Anderson's arguments seek to establish that because of his request for money damages and the common issues of fact with his fraud claim, his promissory estoppel claim is *not* the "normal[]" equitable claim that is "tried to the bench." *See Andreason*, 848 P.2d at 174.

¶38    However, Anderson's arguments do not convince us that his promissory estoppel claim is necessarily a legal one. Anderson asserts that the existence of a common issue between the promissory estoppel and fraud claims created an independent right to a jury trial on the estoppel claim. *See Lytle*, 494 U.S. at 550. We disagree. The mere existence of common factual issues between a legal claim and an equitable claim does not preclude a bench trial of the equitable claim. *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 795 P.2d 658, 662 (Utah 1990). Rather, the district court must employ procedural safeguards to ensure that the right to a jury trial on legal issues is preserved. *See id.* ("[W]hen legal and equitable issues turn on the same operative facts, a jury must decide the legal issue first; the jury's factual determination binds the trial court in its determination of the parallel equitable issue."). As explained in *Palace Exploration Co. v. Petroleum Development Co.*, 316 F.3d 1110 (10th Cir. 2003),

> when a case involves both a jury trial and a bench trial, any essential factual issues which are central to both must be first tried to the jury, so that the litigants' Seventh Amendment jury trial rights are not foreclosed on common factual issues. Moreover, the court is bound by the jury's determination of factual issues common to both the legal and equitable claims.

*Id.* at 1120 (citation and internal quotation marks omitted). The district court appears to have complied with this procedure here, and Anderson does not argue that it did not.

¶39    Anderson's assertion of a blanket rule that a request for money damages transforms an equitable claim into a legal one is contrary to Utah law. *See UTCO Assocs., Ltd. v. Zimmerman*, 2001 UT App 117, ¶¶ 19–20 & n.3, 27 P.3d 177 (concluding that promissory estoppel claim remained equitable despite seeking monetary relief). Anderson also suggests that his claim is

necessarily legal because "the damages sought are the expectation damages available as contract damages." But even if contract damages were the appropriate measure of the amount of damages here,[8] Anderson fails to convincingly explain why that would convert what is ordinarily an equitable claim into a legal one.

¶40    As the appellant in this case, it is Anderson's "burden to demonstrate trial court error." *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885. Anderson's arguments do not establish that the district court's ruling that his promissory estoppel claim was equitable in nature was "patently in error or an abuse of discretion," and we will therefore not disturb the district court's decision.[9] *See Sweeney v. Happy Valley, Inc.*, 417 P.2d 126, 129 (Utah 1966).

## IV. Fraud Damages Instruction

¶41    Anderson argues that the jury instruction on fraud damages misstated the law applying to his claim. The district court instructed the jury that Anderson's "[fraud] damages, if any, are the difference between the compensation he made before he accepted the KJZZ job and the compensation that he made at all jobs after he accepted the KJZZ job, including the compensation he made at the KJZZ job." Anderson argues that a

---

8. We express no opinion on whether contract damages were the appropriate remedy for promissory estoppel in this case.

9. Because we affirm the district court's determination that Anderson's promissory estoppel claim was an equitable one for which there was no right to a jury trial, we need not address the effect of the jury's determination that Anderson had not proved one element of that claim—reasonable reliance—by a preponderance of the evidence.

proper instruction would have allowed for "expectation damages," or the difference between what he was *promised* and what he actually earned in the three years after accepting the KJZZ job.

¶42   We need not decide whether the fraud damages instruction in this case inaccurately stated the law or was otherwise inappropriate. Notwithstanding any flaw in the fraud damages instruction, the jury never reached that instruction because it found that Anderson had not proven fraud liability against either Paynter or LHMCC.[10] When a jury determines that there is no liability on a cause of action, any error in the related damages instruction becomes "irrelevant" and amounts to harmless error. *See King v. Fereday*, 739 P.2d 618, 622 (Utah 1987) ("[T]he jury found defendant not negligent. The requested and refused instruction went to the issue of damages. Because the jury found lack of negligence as to defendant, the issue of damages became irrelevant. Thus, the failure to give the requested instruction, if error, was harmless."). That is what occurred here, and we will therefore not disturb the jury's verdict notwithstanding the alleged error in the fraud damages instruction.

### V. Denial of Anderson's Motion to Amend Complaint

¶43   Anderson argues that the district court erred in denying his pretrial motion to amend his complaint to add a claim for intentional interference with economic relations (IIER). Anderson contends that the IIER claim "did not raise any new

---

10. The verdict form asked, as to both Paynter and LHMCC, "Do you find by clear and convincing evidence that [the defendant] committed fraud on Steve Anderson?" As to each defendant, the jury answered "No." The jury did not answer subsequent questions on the form pertaining to causation and the amount of damages.

factual allegations, but merely provided an additional basis for recovery on the facts already at issue." Anderson argues that leave to amend should be freely given when justice so requires, *see* Utah R. Civ. P. 15(a), and that a district court abuses its discretion by denying a motion to amend "absent a showing that the amendment would be futile, that the defendant would suffer 'unavoidable prejudice,' or that the amendment is made in bad faith." (Quoting *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92–93 (Utah 1992).)

¶44    The district court has discretion to grant or deny a motion to amend a complaint. *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 2009 UT 65, ¶ 13, 221 P.3d 234. In exercising that discretion, the district court ordinarily considers three factors: "(1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party." *Turville v. J & J Props., LC*, 2006 UT App 305, ¶ 31, 145 P.3d 1146 (citation and internal quotation marks omitted). However, the district court retains "the leeway to evaluate the factual circumstances and legal developments involved in each particular case," and "a ruling on a motion to amend may be predicated on only one or two of the particular factors." *Id.* (citation and internal quotation marks omitted).

¶45    Here, the district court ruled on Anderson's motion to amend at a pretrial hearing. The hearing minutes indicate that the district court denied the motion "[f]or reasons stated on the record," but the record on appeal does not contain a transcript of the hearing. As the appellant, Anderson has "the duty and responsibility to support [his] allegations with an adequate record." *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 16, 17 P.3d 1110 (citation and internal quotation marks omitted). "When an appellant fails to designate critical portions of the record as part of the record on appeal, this court presumes the regularity of the proceedings below." *In re adoption of A.M.O.*, 2014 UT App 171,

¶ 12, 332 P.3d 372 (citations and internal quotation marks omitted).

¶46 Without a record of the district court's reasoning, we cannot conclude that the district court abused its discretion in denying Anderson's motion to amend. Further, the district court's ruling appears consonant with the factors identified in *Turville v. J & J Properties, LC*, 2006 UT App 305, 145 P.3d 1146. Anderson filed the motion approximately two weeks before trial with no justification for the delay other than the assertion that, while drafting jury instructions for the upcoming trial, his counsel "recognized that the facts Mr. Anderson has alleged also support a claim for [IIER]." *See id.* ¶ 31 (identifying "timeliness of the motion" and "justification for delay" as factors a court should consider when faced with a motion to amend (citation and internal quotation marks omitted)). The motion to amend also presented a likelihood of "prejudice to the responding party," *see id.* (citation and internal quotation marks omitted), as LHMCC and Paynter would have had to either proceed to trial on the IIER claim without asking for summary judgment or seek further delay in order to do so. The IIER claim would also likely have required further discovery, as it introduced several new factual issues including whether LHMCC and Paynter "intentionally interfered" with Anderson's school employment for "an improper purpose or by improper means." *See Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982) (stating elements of an IIER claim), *overruled in part by Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553 (concluding that, in the absence of any improper means, an improper purpose is not grounds for IIER liability).

¶47 Under these circumstances, Anderson has not demonstrated an abuse of discretion by the district court. Accordingly, we affirm the district court's denial of Anderson's motion to amend.

CONCLUSION

¶48 The district court's actions at trial, including its evidentiary rulings, did not violate Anderson's due process right to a fair trial. Anderson has also not demonstrated that any errors in the district court's evidentiary rulings were prejudicial. Anderson has not met his burden of persuading this court that his promissory estoppel claim fell outside the general Utah rule that such claims sound in equity. The jury's determination that Anderson had not proven fraud liability rendered harmless any error in the jury instruction on fraud damages. Finally, Anderson has not shown that the district court abused its discretion in denying his motion to amend. For these reasons, we affirm the district court's final judgment in favor of LHMCC and Paynter.

_____