**2024 UT App 112**

## THE UTAH COURT OF APPEALS

LETICIA JAIMES AND FRANCISCO JAIMES,
Appellants,
*v.*
FRANCISCO ARELLANO-MEDINA,
Appellee.

Opinion
No. 20220959-CA
Filed August 8, 2024

Third District Court, Salt Lake Department
The Honorable Adam T. Mow
No. 190907680

Brandon C. Stone, Attorney for Appellants

Joseph J. Joyce, Bryan J. Stoddard, and Blake A.
Hallock, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      This case arose when Francisco Arellano-Medina (Father) caused a minor car accident while his wife, Leticia Jaimes (Mother), and son, Francisco Jaimes (Son), were passengers in the car. After the accident, Mother and Son (collectively, Plaintiffs) sued Father to recover damages for alleged injuries stemming from the accident. Before and at trial, the court denied Plaintiffs' requests that they be allowed to explain to the jury that they delayed seeking medical treatment after the accident because their automobile insurer initially denied their claim. The jury returned a no-cause verdict in favor of Father, and Plaintiffs appeal the court's evidentiary ruling. Because the court did not exceed its discretion in excluding the auto insurance evidence, we affirm.

BACKGROUND

¶2    On the morning of September 28, 2018, Father was driving the family car to take Mother to work and Son to school. In his haste, Father backed into the garage door of their home before it had fully opened, resulting in minor damage to the car's trunk lid and a partially broken rear spoiler. The car's airbags did not deploy, as the car was moving only "2 to 3 miles per hour" at the time it hit the garage door. The damage to the car was estimated to cost less than $1,200 to repair.

¶3    Following the accident, Plaintiffs sought out chiropractic treatment for their injuries but only after a thirty-nine-day delay. The family maintained auto insurance through State Farm Insurance Company (State Farm), which initially denied that Plaintiffs were entitled to personal injury protection benefits under their policy. However, State Farm reversed its initial coverage determination, and thereafter Plaintiffs began chiropractic treatment paid for by State Farm.

¶4    While Father admitted responsibility for causing the accident, the parties disputed whether Plaintiffs were injured in the accident and what damages Father was responsible for as a result. Eventually, Plaintiffs filed suit against Father to recover damages from the accident.[1]

¶5    Leading up to trial, Plaintiffs argued that they should be allowed to explain their delay in seeking medical treatment for their injuries by discussing the "auto insurance involvement in this case." Specifically, Plaintiffs argued that they should be "allowed to discuss State Farm's initial denial and later admitting of coverage." Plaintiffs explained that they did "not plan and

---

1. On appeal, Plaintiffs claim that Father was only a nominal defendant in the case because he did not dispute liability and is the husband of Mother and the father of Son. They argue that State Farm is the real party in interest for the defense in this matter.

[were] not requesting that they be allowed to go into a lot of detail regarding the nuances of [the] insurance coverage." Rather, "[i]t would be sufficient simply to state that State Farm . . . was involved, that State Farm initially told Plaintiffs that there was no coverage available but later changed its position and indicated that there was, that Plaintiffs were unable to afford chiropractic treatment on their own, and that [was] the reason for the delay in treatment." Plaintiffs did not ask, however, that they be allowed to explain the treatment gap in a more general way by explaining simply that they did not have insurance coverage at first but did have it later. The defense opposed the motion, arguing that the delay in seeking medical treatment was highly relevant evidence because it suggested a "lack of severe symptoms or real injury." The defense also asserted that under Utah's evidentiary rules, mentioning "State Farm . . . (or any insurance) to the jury in any way" would be improper and inflammatory.

¶6     At the final pretrial conference, the court heard argument on Plaintiffs' request to explain to the jury the reason for the delayed treatment. Plaintiffs asserted they should be allowed to explain that "State Farm initially denied coverage and then later admitted that there was . . . coverage." In the alternative, Plaintiffs argued that the court could exclude evidence of delay in treatment altogether or instruct the jury that "the fact there is insurance coverage does not mean that [Father] is liable." The defense responded that while Plaintiffs were allowed to explain that they did not have the ability to pay for treatment right away, they should not be allowed to mention auto insurance.

¶7     The court denied Plaintiffs' request and determined that while the parties could discuss the treatment delay and Plaintiffs could argue that they were unable to afford treatment right after the accident, they would not be allowed to testify specifically that State Farm's initial denial of personal injury protection benefits was the reason they delayed seeking treatment. The court gave three reasons for its ruling: (1) the reason for the delay was a

factual determination to be made by the jury; (2) rule 411 of the Utah Rules of Evidence generally bars evidence that a person was or was not insured; and (3) if told that the cost of treatment was the problem, the jury could come up with valid reasons on its own that Plaintiffs would not have been able to afford the medical treatment right after the accident but could then later pay for it. The court also ruled that under rule 403 of the Utah Rules of Evidence, Plaintiffs' delay in seeking treatment was "highly probative as to the extent and seriousness of the alleged injuries" but raising the issue of insurance coverage posed a substantial risk of unfair prejudice. *See generally* Utah R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The court did state that if, at trial, the defense pushed the issue "to the extent that there is no other reasonable explanation" given for why Plaintiffs could later afford care, the court "may allow the insurance issue to be raised." But the court cautioned that "discussing coverage determinations risks the jury . . . attaching too much to the fact that there is insurance," and it emphasized that it did not "want any mention of insurance, . . . whether it's State Farm or mentioned generally."

¶8    At trial, in his opening statement, counsel for Plaintiffs stated that Plaintiffs had neck and back pain following the accident. Counsel explained that Plaintiffs "waited a while" to get treatment because "they were worried about the cost of getting treatment" and because "[t]hey were hoping that the pain would go away on its own. It didn't. In fact, it got worse over time. So finally they went to a chiropractor." Plaintiffs testified about the accident and their alleged injuries. Mother said she felt pain in her back and neck after the accident, and the pain got worse before she went to see the chiropractor. Son testified that he started to feel back and neck pain a few hours after the accident, and that pain lasted a few months until he obtained chiropractic treatment.

Neither Mother nor Son specifically addressed the thirty-nine-day delay in seeking treatment. But during cross-examination, Mother acknowledged that she had previously testified, in her deposition, that her pain had not worsened between the time of the accident and her first chiropractic appointment. Mother also acknowledged that she had been involved in two prior car accidents that had caused injuries to her neck and back. Mother testified that on those previous occasions she had received treatment from the same chiropractor she saw after this accident and thereafter filed personal injury claims seeking compensation.

¶9 Plaintiffs called as an expert witness their treating chiropractor, who opined that Mother and Son were injured in the accident, and he also testified as to the cost of the treatment he provided. After the cross-examination of the expert and outside the presence of the jury, Plaintiffs argued that defense counsel's questioning had opened the door to further discussion of why they had waited to seek medical care after the accident. Plaintiffs alleged that defense counsel had asked questions that zeroed in on the treatment gap being "unusual" and that the questions had an effect on "causation." For example, defense counsel had asked the expert whether a patient's delay in seeking treatment would "affect whether [he would] give them treatment in the moment" and whether "some delay between . . . an accident . . . and then [the patient] coming in to seek treatment" would "matter to [him] as far as treatment." Based on these questions, Plaintiffs' counsel asked that he be allowed to "reopen [the] motion to be able to . . . discuss the reason for [the] gap in treatment and the . . . denial of insurance coverage during that time." But defense counsel "disagree[d] with" Plaintiffs' counsel's "characterization of what [his] questions were," asserting that he was "pretty careful" to avoid asking about the treatment gap "affect[ing] [the expert's] opinion on causation" and instead "limit[ed] it to the fact that there was a gap and that [the expert] would treat [Plaintiffs] regardless of how long they waited." The court denied the motion, stating: "I'm still at the same place where we originally

discussed that motion . . . [and] we're not going to get into the insurance discussion."

¶10 The main focus of the defense case was that the force of the auto accident was not sufficient to injure Plaintiffs. The defense called as a witness a biomechanical expert, who testified that according to his calculations, the parties' vehicle was traveling two to three miles per hour at the time it hit the garage door and opined that the potential for injury under those facts was very low. The defense also called its own medical expert, who conducted physical examinations of Mother and Son and reviewed their medical records. The defense medical expert opined that he found no credible evidence of injury being incurred by either Mother or Son.

¶11 The jury determined that Father's fault did not cause any injuries to Plaintiffs, and the court then entered a judgment in favor of Father of no cause of action.

ISSUE AND STANDARD OF REVIEW

¶12 Plaintiffs now appeal and assert that the court abused its discretion when it excluded auto insurance coverage evidence while permitting the jury to hear that Plaintiffs waited thirty-nine days before seeking chiropractic treatment following the accident. A trial court is afforded broad discretion to admit or exclude evidence, and we will disturb its ruling only for an abuse of discretion. *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269. In reviewing for an abuse of discretion, "we will not reverse a trial court's ruling on evidence unless the ruling was beyond the limits of reasonability." *Id.* (quotation simplified); *see also Anderson v. Larry H. Miller Commc'ns Corp.*, 2015 UT App 134, ¶ 17, 351 P.3d 832.

ANALYSIS

¶13 Plaintiffs challenge the court's evidentiary ruling forbidding them from testifying that the reason they waited thirty-nine days after the accident to seek chiropractic treatment was that their auto insurer, State Farm, initially denied them no-fault personal injury protection benefits. Though the parties and the court all agreed that the delay in treatment was a relevant issue at trial, the court barred Plaintiffs from specifically explaining to the jury that State Farm's initial denial of personal injury protection benefits was why they could not pay for the chiropractic care right after the accident. In its ruling excluding this evidence, the court undertook a balancing analysis under rule 403 of the Utah Rules of Evidence and determined that though the evidence was potentially relevant, the defense would be substantially prejudiced by its admission because "discussing coverage determinations risks the jury . . . attaching too much to the fact that there is insurance, which rule 411 [of the Utah Rules of Evidence] bars."[2]

---

2. While the court correctly stated that rule 411 of the Utah Rules of Evidence generally prevents the admission of "[e]vidence that a person was or was not insured against liability . . . to prove whether the person acted negligently or otherwise wrongfully," application of that rule does not necessarily compel the exclusion of the evidence here. Rule 411 allows the admission of evidence of liability insurance for purposes other than proving the negligence of a defendant. *See, e.g.*, *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 37, 221 P.3d 256 ("Utah Rule of Evidence 411 prohibits evidence of liability insurance to show that a person acted negligently but allows evidence of liability coverage to show a witness is biased or prejudiced."). And Plaintiffs argue they did not seek to admit the explanation for the treatment delay as evidence of Father's negligence but, instead, as evidence of the reason for their thirty-nine-day delay in seeking treatment.

¶14    Under rule 403, we generally defer to the trial court's assessment of whether the probative value of the evidence is substantially outweighed by the potential for prejudice. *See Glacier Land Co. v. Claudia Klawe & Assocs.*, 2006 UT App 516, ¶ 24, 154 P.3d 852 ("[T]he trial court is granted broad discretion when weighing the probative value of evidence against the reasons for exclusion enumerated in rule 403."), *cert. denied*, 168 P.3d 819 (Utah 2007). As recognized by the court here, the reason Plaintiffs delayed seeking medical treatment had probative value, but we cannot conclude that the court abused its discretion in denying the specific request Plaintiffs made, namely, that they be allowed to testify that "State Farm initially denied coverage and then later admitted that there was . . . coverage." The court correctly observed that injecting the issue of auto insurance coverage into the case—and naming State Farm specifically—risked confusion of the issues and prejudice to the defense.

¶15    Importantly, at no time over the course of the litigation did Plaintiffs narrow their request and ask the court that they be allowed to explain their delay in seeking treatment without mentioning State Farm or even auto insurance. For example, Plaintiffs could have requested the ability to more generally and simply testify that they did not seek treatment right away because they did not have insurance—which could conceivably refer to either health insurance or auto insurance coverage—and could not otherwise afford the treatment right after the accident. Based on the requests made to the court, Plaintiffs sought to specifically mention only State Farm and its initial coverage decision. While the court could have, and probably should have, allowed Plaintiffs to explain the gap in seeking treatment in more general insurance-based terms, absent a specific request from Plaintiffs, the court was under no obligation to come up with such a solution on its own. And as we fail to perceive that the court's decision to deny Plaintiffs' specific request "was beyond the limits of reasonability," *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269

(quotation simplified), we conclude there was no abuse of discretion in this case.

## CONCLUSION

¶16 The court did not abuse its discretion when it denied Plaintiffs' specific request to testify that the reason for their thirty-nine-day delay in seeking treatment was State Farm's initial denial of their auto insurance claim.

¶17 Affirmed.

———————